## Western Union Telegraph Company *v.* Western and Atlantic Railroad Company.

1. An agreement between a telegraph company and the State of Georgia, sole owner of a railroad, which provides that the company shall put up and set apart on its poles along said railroad a telegraph wire for the exclusive use of the railroad, equip it with as many instruments, batteries, and other necessary fixtures, as may be required for use in the railroad stations, run the wire into all the offices along the line of road, and put the same in complete working order, fixes the terms upon which officers of the road may transmit and receive messages through the connecting lines of the company, recognizes the right of way of the company along the line of road, regulates the use of the wire, and the compensation for it, and binds the State to pay the cost of constructing the wire, and equipping the same at railroad stations not already supplied with instruments, batteries, and other necessary fixtures, does not constitute a sale of such wire, batteries, and other instruments to the State, but is merely a contract for her exclusive use thereof.

2. As the ownership of such wire and instruments is in the telegraph company, a lease of the railroad by the State confers upon her lessees only such rights as she acquired under her contract with the company.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

The State of Georgia, sole owner of the Western and Atlantic Railroad, desiring the use of a telegraph for the purposes of

the road along its line, an instrument of writing providing therefor, bearing date Aug. 18, 1870, signed by William Orton, president, on behalf of the Western Union Telegraph Company, and by Foster Blodgett, superintendent of the railroad, was approved by Rufus B. Bullock, governor, and countersigned by H. C. Carsen, secretary of the executive department.

The substance of this agreement was, that the company should put up and set apart on its poles already there, along said railroad, a telegraph line for the exclusive use of the railroad; equip it with as many instruments, batteries, and other necessary fixtures, as might be required for use in the railroad stations; run the wire into all the offices along the line of the road, and put the same in complete working order. Other provisions related to the terms on which the officers of the road might transmit and receive messages through the connecting lines of the company; to the right of way of the company along the line of the road; and to other matters regulating the use of the wire, and compensation for it. The sixth article bound the State to pay, as soon as it could be ascertained, the cost of constructing the wire, and of equipping it at railroad stations not already supplied with instruments, batteries, and other necessary fixtures. Shortly after the wires were set up, and the instruments put in working order, the governor of the State, under authority of an act of the legislature, granted, conveyed, and leased "the Western and Atlantic Railroad, which is the property of the State of Georgia, together with all its houses, workshops, dépôts, rolling-stock, and appurtenances of every character, for the full term of twenty years," to certain persons who became a body corporate by the name of "The Western and Atlantic Railroad Company."

The railroad company took possession of the road and its appurtenances under the lease, including the wire and batteries and instruments put on the road and in its offices by the telegraph company under the contract with the State; but, having this possession, refused to pay for the transmission of messages over connecting lines according to the terms of the contract, and claimed that it was not bound thereby, and that, in fact, the true construction of that agreement being that the State had bought and paid for the wire and instruments, and owned

them, it, as lessee of the State, had the right to control and use them without any liability to the telegraph company.

The telegraph company, in its bill of complaint, states the refusal of the railroad company to recognize its rights in any respect, while insisting on using the wire and apparatus, and withholding from the complainant any use of them in the offices and dépôts of the road; alleges that these considerations induced the complainant to treat as revoked and withdrawn all power and privilege on the part of the defendant to use said wire and apparatus, or to receive compensation therefor; and that the complainant, seeking to recover possession of them, had been hindered and obstructed by the defendant in so doing. The bill prays that the defendant be enjoined from using said wire, from hindering or obstructing the complainant in the use of it, or in severing it from all the offices of the defendant, and for such other and further relief as the nature of the case requires.

The railroad company, in its answer, denies that the contract between the telegraph company and the State is valid, being without authority of law; asserts that, if valid, it, as lessee of the railroad, is not bound by the terms thereof; and that, by the true construction of that contract, the State became the purchaser and owner of the wire and instruments, and that the company succeeded to this ownership without being bound by the other terms of the agreement.

The railroad company also filed a cross-bill, setting up this view of its rights, and praying an injunction against the telegraph company to restrain it from interfering with the use of the wire and apparatus so acquired from the State.

The District Court dismissed this cross-bill on demurrer, and on hearing the original bill of the complainant, the answer and evidence, decreed that the wire and instruments in question are the property of the State of Georgia, and are included in the lease to the railroad company; and that this company is not bound by the terms of the contract in other respects, unless adopted by it; and, therefore, dismissed the bill.

*Mr. J. Hubley Ashton* for the appellant.

The agreement between the State and the Western Union Telegraph Company neither constituted nor contemplated a

*sale* of the wire, but merely the right of the State to use it and its equipments for the purposes mentioned in such agreement, subject to all the terms, conditions, and obligations therein expressed. The scheme and objects of the contract, as clearly set forth in the recital, were "to provide necessary telegraph facilities" for the State, as proprietor and manager of the railroad; to settle the terms upon which the telegraph company should occupy the railroad "with the line or lines of telegraph *wires* belonging to" that company; and to define the business relations between it and the State.

No particular covenant of the State was intended to be the special consideration for any *one* covenant on the part of the company; but the consideration on each side was an *entirety*.

As part of this entirety of consideration for all that was stipulated to be done by the telegraph company for the benefit of the State, the latter agreed to pay, as soon as it could be ascertained, the cost of constructing and equipping the wire; not the *value* of the property as upon a sale to a purchaser, but its bare *cost* to the company.

Consequently, it was *not* a contract of "bargain and sale," by which the title to the wire and its equipments was transferred to the State.

It is indisputable that the instrument contains no *expressed* agreement on the part of the telegraph company to *sell*, or on the part of the State to *purchase*, any telegraph wire at any price: on the contrary, the company agreed to "set apart" on its line of poles a telegraph wire for the exclusive use of the State in the transmission of legitimate railroad messages — that is, messages on the business of such railroad — on and along the line of the road.

It is clear that the title to the property in question did not pass to the State under the contract; and she, therefore, had no power to lease it to the railroad company.

The transaction between the railroad company and the State, according to the version of it given in the answer of the former, purports to have been an assignment and lease of the general and absolute property in the wire and equipments for the term of twenty-one years, and not an assignment or lease of the *contract* or the State's restricted right of user; and, if this was

the transaction, there can be no doubt, upon well-settled principles of law, that it was absolutely tortious, and that the use of the property by the railroad company has been from the beginning a continuing trespass as against the Western Union Telegraph Company.

The act of the legislature of Georgia authorized the governor of the State to lease the Western and Atlantic Railroad, together "with all its houses, workshops, dépôts, rolling-stock, and *appurtenances* of every character," for the term of twenty-one years. Georgia Acts 1870, p. 55.

The lease executed in compliance with that act does not in terms purport to pass or transfer the *contract* of the State with the Western Union Telegraph Company. The claim of the railroad company is, that the intention was to pass the *title* of the property in reference to which the contract was made, as a piece of property owned by the State, and appurtenant to the road.

If it be conceded that the right or interest in the State, under the contract of 1870, amounted to a special property in the wire and equipments (as it did not, for there can be no special property without possession, which the railroad had not) which might have been assigned or leased by the State, nevertheless the State had no right to sell or lease the property of the telegraph company; and, if it had a special property in the wire, it thereby determined the contract with that company, and parted with its limited interest, and its lessee rendered itself liable to be dealt with as a trespasser by receiving and using the property under such a transaction. 1 Chit. on Cont. 534; Story on Bail., sect. 322; *McCombie* v. *Davis*, 6 East, 540; *Loeschman* v. *Machin*, 2 Stark. N. P. C. 311; *Cooper* v. *Willomatt*, 1 Com. Bench, 683; *Bryant* v. *Wardell*, 2 Exch. 482; *Fenn* v. *Bittleston*, 7 id. 157; *Farrant* v. *Thompson*, 5 B. & Ald. 529; *Emerson* v. *Fisk*, 6 Greenl. 206; *Croker* v. *Gullifer*, 44 Me. 491; *Hyde* v. *Noble*, 13 N. H. 499; *Stanley* v. *Gaylord*, 1 Cush. 542–551; *Galvin* v. *Bacon*, 2 Fairf. 30; *Austin* v. *Dey*, 46 N. Y. 502; *Ballard* v. *Burgett*, 40 id. 314; *Sanborn* v. *Colman*, 6 N. H. 15; Story on Bail., sect. 396.

But, if the lease of the railroad and its appurtenances is to be deemed a demise or assignment of the *contract* between the State and the telegraph company and the right of user exercisi-

ble by the former under that contract, it is equally clear, upon the averments in the answer, that the railroad company is not in the lawful control or use of the property, as it has announced its determination not to be bound by such contract. *Penn. R.R. Co.* v. *Sly*, 65 Penn. 209; *McMillan* v. *M. S. & N. J. R.R. Co.*, 16 Mich. 102; *Tomlinson* v. *Branch*, 15 Wall. 464; *L. & S. W. R.R. Co.* v. *S. E. Railway Co.*, 8 Exch. 604; *Fouldes* v. *Willoughby*, 8 Mees. & Wels. 549; Story on Bail., sect. 89; *Clark* v. *Gilbert*, 2 Bing. N. C. 343.

*Mr. Benjamin H. Hill* for the appellee.

The property in dispute is not owned by the Western Union Telegraph Company, but by the State of Georgia. It was purchased by the State, and paid for after the lease to the appellee. It stood upon the poles on the land of the State. She therefore had the exclusive dominion over and the use of it.

When the exclusive use of a thing is granted, the thing itself is by such terms conveyed.

"If the grant be of the uses of and dominion over land, it carries the land itself." 3 Wash. Real Prop. (ed. 1868), p. 333, * 622; Coke, Litt. lib. 1, cap. 1, of Fee-Simple; *Caldwell* v. *Fulton*, 31 Penn. 484.

The State was then operating the road, and the wire was set apart for her exclusive use; and there can be no escape from the conclusion that it was the property of the State. If this is not the proper construction, then there was no *mutuality* in the contract, and it was void.

If the contract has all the force it ever had against the State, then it is insisted that the telegraph company cannot sustain this action, because the railroad company is not bound for the contracts or torts of the State of Georgia prior to the date of the lease, unless it becomes so by contract.

Sect. 4 of the Lease Act (Acts of Georgia, 1870, p. 425) expressly provides that the railroad company "shall be liable for its contracts made after the execution of the lease, and for any cause of action to which it may become liable after said lease is executed.

It is clear, from all the sections of the act of 1870, that the State did not intend that her lessees should assume her obligations; and, in contracting to lease the road, they did not assume them.

It is also clear that the appellee is not in any way bound to the appellant by express contract, because it made none, and refused to be bound by that with the State. If the contract between the telegraph company and the State is a covenant at all, it is a personal covenant, and binding only on the makers thereof. *Taylor* v. *Owen*, 2 Blackf. 301.

MR. JUSTICE MILLER, after stating the case as above, delivered the opinion of the court.

We differ with the District Court as to the construction of the instrument. We do not think that the State simply bought a wire and batteries and other instruments, and became absolute owners of them : on the contrary, we think that the contract was for the use of a wire and instruments of the telegraph company.

The language of the first covenant of the telegraph company is, that it agrees "to set apart on its line of poles along said railroad a telegraph wire for the exclusive use of said party of the second part." The further covenants are all consistent with this. The contract for the use of this wire in connection with the others, and for the use of one of the wires already there when this shall be disabled, the fact that it is placed upon the poles of the company already in use for two other wires, the agreements regulating the offices, and, in short, the whole frame of the contract, show that the wire, the poles, the instruments, were the property of the telegraph company, with exclusive use of *this* wire transferred to the railroad.

This view is perfectly consistent with the idea that the State should pay the cost and expense of the additional wire and instruments rendered necessary by this agreement for its exclusive use, which does not prove that any thing more than this right to exclusive use passed to the State.

If this be true, the railroad company, taking possession of this wire and instrument under claim of right from the State, must use it on the terms which bound the State, or not use it at all.

The ownership being in the telegraph company, the road could only have such use of it, lawfully, as it acquired from the State; and the right of the State to the use of it is governed by the terms of the agreement.

It is said that the contract between the State and the telegraph company is void, because the superintendent and the governor had no power to make it, and because it is oppressive and extortionate.

We do not decide whether this be so or not. Whenever the railroad company or the State shall cease to use the wire, shall abandon the contract and leave the instruments severely alone, and the complainant shall then seek to compel compliance with the contract, it will be time to decide that question; but so long as this company, by the use of the wire and the apparatus, gets the benefit of the contract, it must also abide by the terms in other respects.

We are embarrassed in this view of the subject by the unskilful character of the bill. The relief it seeks is the very last one would think of; namely, to enjoin the railroad company from the use of a wire and battery and instruments running along their line, and fixtures in their offices and dépôts, where they may remain until it be the pleasure of the complainant to take them away. The right to compensation for what the complainant has suffered by the failure of defendant, while using the wire, to comply with the covenants of the State, can be understood, and the right of defendant, when performing the covenants of the State, to use the wire, can be understood; the right to a rescission of the contract, if either party prayed therefor, can be understood: but this right which each claims, that it shall be let alone by the other to do as it pleases in regard to this wire, is very difficult to understand.

Complainant, in the petition, treats as revoked the power and privilege of defendant to use the wire and instruments. Is this an abandonment of the contract by complainant?

But there is in the bill a prayer for such other and general relief as the case may require. There is also the following stipulation after the pleadings are all in, which relieves us of much difficulty: —

"It is agreed by counsel, that if the use of the wire by the defendant is affected by the contract entered into between the complainant and the State (which contract is copied in the exhibit to the bill) in such 'manner as that the terms of said contract must be observed and complied with by defendant in order to retain the

right to such use, the case is one proper for reference to the master to take an account, unless the court should adjudge that there is no right in complainant to relief in equity."

Now, we are of opinion that the use of the wire by defendant *is* affected by the contract between complainant and the State, in such manner, that such use requires the defendant to comply with the terms of that contract.

We are also of opinion that to prevent multiplicity of suits, and to have an accounting, instead of bringing a suit on every specific violation of the covenants of the State, complainant has a right to relief in equity.

> *The decree of the Circuit Court is, therefore, reversed, with directions to refer the case to a master to state an account on the terms of the contract between the State and the telegraph company, as between the complainant and defendant, for the time defendant has used the wires, batteries, and equipments put up under that contract, and to render a decree for that amount.*

MR. JUSTICE FIELD dissented.