## GEORGE H. LEE CO. v. WEBSTER.

(Circuit Court, D. Kansas, First Division. June 29, 1911.)

COMMERCE (§ 64*)—STATUTES (§ 64*)—INSPECTION (§ 2*)—KANSAS STATUTE
RELATING TO FEEDING STUFF—CONSTITUTIONALITY.

Laws Kan. 1907, c. 407, § 2, which requires every brand of concen-
trated feeding-stuff sold or offered for sale within the state to be reg-
istered in the office of the director of the experiment station of the State
Agricultural College, and provides that such director shall register a
brand where it is shown by a statement of the ingredients presented by
the manufacturer or seller that none of the same are unwholesome, dele-
terious, or fraudulent, and on payment of an annual registration fee of
not less than $10, is not an inspection law, and, as applied to products
made in another state and shipped to dealers in Kansas for sale, is un-
constitutional and void, as imposing a tax on interstate commerce. Sec-
tion 5, however, as amended by Laws Kan. Sp. Sess. 1908, c. 75, which
imposes an inspection tax of 25 cents per ton on all cotton seed meal,
cotton seed cake, linseed oil meal, etc., sold or offered for sale in the
state, to defray the expenses of actual inspection of such products, is a
valid inspection law, within the constitutional power of the state, and
its validity is not affected by the invalidity of section 2.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 64;* Statutes,
Cent. Dig. §§ 58–66; Dec. Dig. § 64;* Inspection, Dec. Dig. § 2.*

Inspection, quarantine, and sanitary regulations interfering with in-
terstate commerce, see note to Smith v. Lowe, 59 C. C. A. 191.]

In Equity. Suit by the George H. Lee Company against Edward H.
Webster, individually and as manager and director of the Agricultural
Experiment Station of the Kansas Agricultural College. On final
hearing. Decree for complainant in part, and for defendant in part.

E. G. McGilton, W. S. McClintock, and A. L. Quant, for com-
plainant.

F. S. Jackson, John Marshall, and Chas. D. Shukers, for defendant.

POLLOCK, District Judge. This suit was brought by complainant,
a corporation of the state of Nebraska, engaged in the business of
manufacturing within that state and transporting and selling within
this state various compounds and preparations for poultry, stock, and
other animals, under the name of "Lee's Egg Maker," "Lee's Best
Conditional," "Lee's Hog Remedy," "Lee's Worm Powder," etc.,
against defendant, in his individual capacity, and as manager and di-
rector of the agricultural experiment station of the state, to secure
a perpetual order of injunction against defendant from enforcing, or
attempting to enforce, against complainant's business, the provisions of
sections 2 and 5 of an act of the Legislature, entitled, "An act regu-
lating the sale of concentrated feeding-stuffs, forbidding their adul-
teration, providing for their inspection and analysis, providing penal-
ties for its violation," etc., same being chapter 407, Laws 1907, as
amended by chapter 75, Laws Sp. Sess. 1908. The suit is based on
the ground said sections, in so far as the business of complainant is
concerned, are in violation of the national Constitution, because levy-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

190 F.—23

ing a tax on interstate commerce, and therefore void. Said section 2 reads as follows:

"Every brand of concentrated feeding-stuff offered or held for sale or sold within the state of Kansas shall be registered in the office of the director of the agricultural experiment station of the Kansas State Agricultural College, and each sale of any concentrated feeding-stuff not so registered shall constitute a separate violation of this act. The manufacturer or seller of any concentrated feeding-stuff shall apply to the said director of the experiment station for registration and analysis of the feeding-stuff, and in his application for such registration and analysis he shall submit a statement of the several ingredients used in preparing the concentrated feeding-stuff, and the sources from which they are obtained, which information shall be filed for reference, but shall not be disclosed by said director, if none of the ingredients are unwholesome, deleterious or fraudulent. If the feeding-stuff, as described by the manufacturer or seller, is found to consist of wholesome materials, and the name or brand used to designate it is not false or misleading, the said director of the experiment station shall register the name. brand or other designation of the concentrated feeding-stuff, its guaranteed composition, in the terms stated in this section, and the name and address of the manufacturer or seller applying for the registration. Such registration shall be made annually, and the manufacturer or seller shall pay a registration fee of ten dollars for each brand of concentrated feeding-stuff registered: Provided, that any manufacturer of condimental or medicinal stock foods shall pay a registration fee of fifty dollars for each brand selling for more than forty dollars per ton."

Section 5, as amended by act of 1908, reads as follows:

"An inspection tax shall be collected upon all cotton seed meal, cotton seed cake, linseed oil meal, linseed oil cake and feeding-stuff by-products of starch factories, glucose factories, cereal breakfast-food factories, breweries, and distilleries, meat-packing establishments or slaughtering houses that are sold, offered for sale, or held for sale within the state of Kansas, which tax shall be at the rate of twenty-five cents per ton, except as hereinafter stated. Every sack, box, carton or other package of the feeding-stuffs named in this section that is sold, offered for sale, or in the possession of any one within the state of Kansas shall bear at least one tag certifying that the tax aforesaid has been paid on one hundred pounds or a fraction thereof. If any package contains more than one hundred pounds it shall bear one tag for each one hundred pounds or fraction thereof, and in case the concentrated feeding-stuff is sold in bulk one tag shall be delivered with each one hundred pounds or fraction thereof. All tags required under the provisions of this section shall be obtained from the aforesaid director of the experiment station in lots of four hundred or multiples thereof, and he shall receive from the manufacturer or seller five dollars for each four hundred so furnished. Such tags shall be good until used, but counterfeiting them or using them more than once is prohibited. The tax so collected, together with all registration fees collected, shall be used, so far as may be necessary, in defraying the expenses of inspection and analysis of concentrated feeding-stuffs as hereinafter provided, and if any residue remains it shall be turned into the general funds of the experiment station aforesaid: Provided, however, that employés of the state upon salaries shall not receive any additional compensation for making such inspection and analysis."

Defendant answered the bill, and proofs have been taken from which it is found complainant in the conduct of its business was making sales of its several different products manufactured in the state of Nebraska and shipped into this state to some 500 customers in this state at the time the suit was instituted; that all of complainant's products sold to its customers in this state were sold at a price ex-

ceeding $40 per ton. The facts necessary to confer jurisdiction are admitted by the answer, and it is further admitted therein the products of complainant are neither deleterious nor harmful.

While defendant was not endeavoring to directly enforce collection of the registration fee of $50 per annum on each brand of the products of complainant so manufactured and sold by it, he was pursuing the course of sending letters and circulars to merchants doing business in the state who purchased and sold the products of complainant, threatening them with prosecutions for violations of said law, and suits to compel the payment from them of the registration fee and exactions found in the statutes quoted, and further warning them not to deal with complainant because its said products were not registered under the provisions of the law, but to deal with other manufacturers who complied with the law, all to the very great annoyance and injury of complainant in its trade and business in this state. From all the proofs it clearly appears, if the exactions required by said statutory provisions are unconstitutional as claimed by complainant, it has just ground for the relief prayed. If not, there is no ground for this suit.

The sections above quoted will be considered separately, and in so far as section 2 of the act quoted is concerned, complainant asserts it is a tax on interstate commerce therefore void. The defendant insists (1) it is an inspection law of the state which is expressly recognized by the national Constitution, therefore valid; (2) that said act is intended to operate only on articles of commerce after such articles have been intermingled with the great mass of property within the state, and therefore does not in any way touch interstate commerce or constitute a tax or impose a burden thereon. It is evident, however, complainant has the right on compliance with all lawful demands of the state to bring his products within the state, and to there dispose of them to his customers without let or hindrance from the state, or its authorized agents, either through exactions made directly upon complainant in reference to such interstate business, or by interference with such business by the state indirectly through complainant's customers, to his injury and the detriment of such business. In Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, Mr. Justice Marshall, delivering the opinion, said:

"A tax on the occupation of an importer is, in like manner, a tax on importation. It must add to the price of the article, and be paid by the consumer, or by the importer himself, in like manner as a direct duty on the article itself would be made. This the state has not a right to do, because it is prohibited by the Constitution."

In Robbins v. Shelby Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694, Mr. Justice Bradley, delivering the opinion of the court said:

"When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property, and amenable to its laws, provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way, as other goods are. * * * But to tax the sale of such goods, or the offer to sell them, before they are

brought into the state, is a very different thing, and seems to us clearly a tax on interstate commerce itself. It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers—those of Tennessee and those of other states, that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce or that which is carried on solely within the state."

In Norfolk, etc., Railroad Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394, Mr. Justice Lamar, delivering the opinion of the court, said:

"It is well settled by numerous decisions of this court that a state cannot, under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burdens upon such commerce within its limits."

In Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, Mr. Justice Harlan, delivering the opinion of the court, said:

"But we fail to see how a state can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business is a tax on the occupation; and a tax on the occupation of doing a business is surely a tax on the business."

In like manner it must be held the imposition of an annual registration fee of $50 for each of the several brands of products manufactured by complainant before the same may be sold or offered for sale in this state is a tax on the privilege of doing business in the state, and is therefore a tax on the business itself.

The question, therefore, is, Does said section 2, rightly construed, provide for an inspection tax on the products of complainant coming within the state for the protection of the inhabitants of the state from imposition or injury in the purchase and use of the same? If so, the right of the state to exact the same is clearly recognized by the federal Constitution, and the provision above quoted is valid. If, however, the same be found to be not an inspection fee or tax, it is a tax or burden on interstate commerce prohibited by the national Constitution, hence invalid, and affords no warrant of authority to defendant, either individually or in his representative capacity, to interfere with complainant's business.

By reference to the act it is seen the manufacturer or seller of any concentrated feeding-stuff, before he is entitled to dispose of the same in the state, shall apply to have it registered, submitting a statement of the ingredients thereof, and from what source the same are obtained, and, if it be found from such statement the feeding-stuff is wholesome and the brand thereon neither false nor misleading, then the name or brand of such feeding-stuff shall be registered on payment of an annual registration fee of $50 for each brand in case the stuff sells for more than $40 per ton, and $10 for each brand of such feeding-stuff selling for less than $40 per ton, and thereafter the manufacturer or seller of such stuff may, within the year for which the registration tax or fee is paid, sell without limit of such brand, from all of which it is entirely clear the fee here imposed has no semblance or relation to an inspection fee whatever, but is, as the statute

denominates it, an annual registration fee of $50 required of complainant for each brand of its product sold in the state as a prerequisite to engaging in the business of disposing of the same within the state.

Mr. Justice White, delivering the opinion of the court in Vance v. W. A. Vandercook Company (No. 1) 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, in speaking of a similar exaction as here required, said:

"It is claimed in argument that this law is an inspection law passed for the purpose of guaranteeing the purity of the product to be shipped into the state for the use of a resident therein, and therefore it is but a valid manifestation of the police power of the state exerted for the purposes of inspection only. But it is obvious that this argument is unsound, as the inspection of a sample sent in advance is not in the slightest degree an inspection of the goods subsequently shipped into the state. The sample may be one thing, and the merchandise which thereafter cames in another. It is hence beyond reason to say that the law provides for an inspection of the goods shipped into the state from other states, when, in fact, it exacts no inspection whatever."

In the case at bar the fee imposed is not for the examination of a sample of the products sold by complainant, but is merely a fee exacted of complainant for registering the brand of goods offered by him, and this registration is made, not from an examination of the goods themselves, or even a sample of the goods, but from a statement as to the ingredients of the goods and from whence obtained, submitted by complainant. There can be no question under the authorities but that the registration fee required by section 2 of the act, in so far as complainant is concerned, is a tax on his right to engage in the business of selling his products to his customers in this state, and is therefore unconstitutional and void.

Coming, now, to a consideration of the provisions of said section 5, above quoted, as amended by act of 1908, it is seen to provide for an inspection of all cotton seed meal, cotton seed cake, linseed oil meal, linseed oil cake, and feeding-stuff by-products of starch factories, glucose factories, cereal breakfast food factories, breweries, distilleries, meat-packing establishments, and slaughterhouses sold or offered for sale in this state, and a level charge of 25 cents per ton on all said products without discrimination as to value of the product is made. It further provides for the actual inspection of all such products sold within the state, and the manner in which the fact of such inspection shall be evidenced, from all of which it is plain, in so far as the provisions and exactions of said section are concerned, it is purely one of actual inspection of the goods sold, for which service a flat rate of 25 cents per ton is charged. While it is true inspection charges laid by a state on articles of interstate commerce must be limited to the necessary cost of the making of such inspection, under that provision of the national Constitution which authorizes the charging of the commerce with such inspection, which provides, as follows:

"No state shall without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress." Clause 2, § 10, art. 1, Const.

Yet the exaction of a reasonable flat rate to defray the expense of actual inspection similar to that here provided for has been upheld as within the power of the state. Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191, which involved the validity of an act of the state of North Carolina by the provisions of which a level inspection fee of 25 cents per ton was charged on all fertilizers brought into the state for sale. Mr. Chief Justice Fuller, delivering the opinion of the court, upholding the validity of the enactment, after a review of many authorities, said:

"The act of January 21, 1891 [Laws 1891, c. 9], must be regarded, then, as an act providing for the inspection of fertilizers and fertilizing materials in order to prevent the practice of imposition on the people of the state, and the charge of 25 cents per ton as intended merely to defray the cost of such inspection. It being competent for the state to pass laws of this character, does the requirement of inspection and payment of its cost 'bring the act into collision with the commercial power vested in Congress? Clearly, this cannot be so as to foreign commerce, for clause 2 of section 10 of article 1 expressly recognizes the validity of state inspection laws, and allows the collection of the amounts necessary for their execution; and we think the same principle must apply to interstate commerce."

In any view, the effect on that commerce is indirect and incidental, and "the Constitution of the United States does not secure to any one the privilege of defrauding the public."

In the light of reason and authority, that case appears to be controlling here, and to establish beyond dispute the validity of the flat fee of 25 cents per ton exacted in this case by the state to defray the expense incurred by it in making an actual inspection of the products of complainant which fall within the classification made by said section of the act.

It follows as the imposition of the registration fee of $50 per ton exacted by the provisions of section 2 of the act as above quoted can in no just sense be regarded as an inspection fee, but must be regarded as a tax on the business of complainant in the manufacture of concentrated feeding-stuffs in the state of Nebraska brought into this state for sale, levied, and collected by the state as a condition to the right of complainant to engage in such interstate business, the same is beyond the power of the state, violates the second clause of section 10 of article 1 of the national·Constitution, and is therefore void, and affords to defendant neither in his individual nor his representative capacity any authority of law to demand said exactions either direct of complainant engaged in said business, or to interfere with the transaction of said business through his patrons in the manner charged by the bill of complaint in this case. On the contrary, the fee of 25 cents per ton provided in section 5 of the act of 1907, as amended by the act of 1908, is an inspection fee which may be levied and collected by the state in the protection of its citizens from impositions in the sale of such products. That said section is well within the power of the state, and does not violate any provisions of the national Constitution. That said sections, while found in the same act, are clearly separate in purpose and design, and, although said section 2 be as declared invalid and stricken down, the remainder of said act may stand as complete within itself and valid.

It follows from the proofs found in the record the prayer of the bill must be granted unto complainant in so far as the defendant is attempting to proceed under authority of said section 2 of the act, and that he be restrained, as prayed in the bill, from further, either directly or indirectly, attempting the enforcement of said provisions of section 2, as against complainant; that from the proofs in so far as said section 5 of the act is concerned the same is valid and within the constitutional power of the state, and a decree against the enforcement by defendant of said section must be denied **for** want of equity, and the bill in that respect be dismissed.

It is so ordered.