**BOYCE v. FRENCH, Director of Agriculture, et al.**

(District Court, W. D. Washington, S. D. October 4, 1923.)

No. 177E.

Commerce ⚙══64—Washington statute imposing a license tax on dealers in seeds grown in other states held invalid as discriminatory and burden on commerce.

Rem. Comp. Stat. Wash. § 2827, as amended by Acts 1923, c. 137, § 6, imposing a license tax on dealers in agricultural seeds, to be used in paying the expense of inspection of seeds by the director of agriculture who is required to inspect all seeds for sale in the state, but which exempts from such tax dealers in seeds grown within the state and purchased from the producers, is invalid as discriminating against seeds grown in other states and imposing an unauthorized burden upon interstate commerce.

In Equity. Suit by J. A. Boyce, doing business as the J. A. Boyce Seed Company, against E. L. French, as Director of Agriculture of the State of Washington, and John H. Dunbar, as Attorney General thereof. On motion for preliminary injunction. Granted.

Dunworth, Todd & Higgins, of Seattle, Wash. (Curtis Nye Smith, of Boston, Mass., of counsel), for plaintiff.

John H. Dunbar, Atty. Gen., and E. W. Anderson, Asst. Atty. Gen., for defendants.

Before RUDKIN, Circuit Judge, and CUSHMAN and NETERER, District Judges.

CUSHMAN, District Judge. Plaintiff is engaged in the business of purchasing seeds at wholesale from dealers located in various states of the United States and selling the same at wholesale and retail in the state of Washington. It is alleged that all the seeds dealt in by plaintiff have been transported in interstate commerce. Plaintiff asks for a temporary injunction restraining defendants and each of them from enforcing or attempting to enforce the provisions of section 6 of chapter 137, Laws of the State of Washington for 1923, amending section 2827 of Remington's Compiled Statutes, and from prosecuting the plaintiff or any of his customers for failure to pay the license fees purported to be imposed thereby.

Plaintiff cites and relies upon the following authorities: Sonneborn Bros. v. Cureton, 43 Sup. Ct. 643, 67 L. Ed. 1095, decided June 11, 1923; Ward v. Maryland, 79 U. S. (12 Wall.) 418, 20 L. Ed. 449; Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 350; Guy v. Baltimore, 100 U. S. 434, 25 L. Ed. 743, 745; Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565, 567; Walling v. Michigan, 116 U. S. 446, 6 Sup. Ct. 454, 29 L. Ed. 691, 694; Robbins v. Shelby County, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694, 698; Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213, 34 L. Ed. 862, 863; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649, 652; Darnell v. Memphis, 208 U. S. 113, 28 Sup. Ct. 247, 52 L. Ed. 413, 419, 420; Crenshaw v. Arkansas, 227 U. S. 389, 33 Sup. Ct. 294, 57 L. Ed. 565, 569; Sault Ste.

⚙══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Marie v. International Transit Co., 234 U. S. 333, 34 Sup. Ct. 826, 58 L. Ed. 1337, 1341, 52 L. R. A. (N. S.) 574; Sioux Remedy Co. v. Cope, 235 U. S. 197, 35 Sup. Ct. 57, 59 L. Ed. 193, 197; Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 Sup. Ct. 571, 65 L. Ed. 1029, 1032; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 Sup. Ct. 106, 66 L. Ed. 239, 243, 244; Southern R. Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, 691; In re Schechter (C. C.) 63 Fed. 695, 697; Compton Co. v. Allen (D. C.) 216 Fed. 537, 548; Davis v. Wallace, 257 U. S. 478, 42 Sup. Ct. 164, 66 L. Ed. 325, 328; Buchanan v. Warley, 245 U. S. 60, 38 Sup. Ct. 16, 62 L. Ed. 149, 160, L. R. A. 1918C, 210, Ann. Cas. 1913A, 1201.

Defendants, in addition to the authorities cited above, cite and rely upon the following: Southern Ry. Co. v. King, 217 U. S. 524, 30 Sup. Ct. 594, 54 L. Ed. 868; Engel v. O'Malley, 219 U. S. 128, 135, 31 Sup. Ct. 190, 55 L. Ed. 128; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 Sup. Ct. 784, 56 L. Ed. 1197; Rosenthal v. People, 226 U. S. 260, 271, 33 Sup. Ct. 27, 57 L. Ed. 212, Ann. Cas. 1914B, 71; Jeffrey v. Blagg, 235 U. S. 571, 576, 35 Sup. Ct. 167, 59 L. Ed. 364; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 545, 34 Sup. Ct. 359, 58 L. Ed. 713; Farmers Bank v. Minnesota, 232 U. S. 516, 630, 34 Sup. Ct. 354, 58 L. Ed. 706; Hatch v. Reardon, 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736; Smiley v. Kansas, 196 U. S. 447, 457, 25 Sup. Ct. 289, 49 L. Ed. 546; Darnell v. Indiana, 226 U. S. 390, 33 Sup. Ct. 120, 57 L. Ed. 267; Bosley v. McLaughlin, 236 U. S. 385, 395, 35 Sup. Ct. 345, 59 L. Ed. 632; Middleton v. Power & Light Co., 249 U. S. 152, 39 Sup. Ct. 227, 63 L. Ed. 527; Sonneborn Bros. v. Cureton, 43 Sup. Ct. 643, 67 L. Ed. 1095, decided June 11, 1923; Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; American Steel Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538; General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. Ed. 754; Woodruff v. Parham, 8 Wall. 123, 19 L. Ed. 382; Hinson v. Lott, 8 Wall. 148, 19 L. Ed. 387; Howe Machine Co. v. Gage, 100 U. S. 676, 25 L. Ed. 754; Wagner v. Covington, 251 U. S. 95, 40 Sup. Ct. 93, 64 L. Ed. 157; Texas Co. v. Brown, 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721; Bowman v. Continental Oil Co., 256 U. S. 642, 41 Sup. Ct. 606, 65 L. Ed. 1139; Lee Co. v. Webster (C. C.) 190 Fed. 353; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; Pure Oil Co. v. Minnesota, 248 U. S. 158, 39 Sup. Ct. 35, 63 L. Ed. 180; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182; Red "C" Oil Co. v. North Carolina, 222 U. S. 380, 32 Sup. Ct. 152, 56 L. Ed. 240; Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191; McLean v. Denver & & R. G. Ry. Co., 203 U. S. 38, 27 Sup. Ct. 1, 51 L. Ed. 78; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 Sup. Ct. 784, 56 L. Ed. 1197; Willis v. Standard Oil Co., 50 Minn. 290, 52 N. W. 652; State v. McKinney, 29 Mont. 388, 74 Pac. 1095, 1 Ann. Cas. 579; Littlefield v. State, 42 Neb. 223, 60 N. W. 724, 28 L. R. A. 588, 47 Am. St. Rep. 694.

Section 2811 of Remington's Compiled Statutes prohibits the sale of vegetable seeds below a certain percentage of the standard of germinable viability.

Section 2813 and section 2821 fix certain standards of germination.

Sections 2814, 2815, and 2816 provide generally and in particular cases how packages of seeds shall be marked and labeled.

Section 2817 specifies under what circumstances the act shall not apply.

Sections 2818, as amended, and 2819, as amended in part, prohibit the sale of seeds containing a greater number of weed seed than provided.

Section 2820, as amended, defines impurities and makes provision for labeling seed packages where impurities are present in excess of a certain amount.

Section 2822 defines misbranding.

Section 2823 provides for the maintenance of a laboratory for the analysis, grading and other tests by the director of agriculture.

Section 2824 imposes the duty of enforcing the act upon the Commissioner' of Agriculture.

Section 2825, as amended, provides:

"It shall be the duty of the said director of agriculture, either by himself or his inspectors or assistants, to inspect, examine, and take samples of any agricultural seeds, stored, sold, offered or exposed for sale or distribution within this state for seeding purposes, at such time, and place, and to such extent as he may determine.

"The director, supervisor, inspectors, or assistants shall have free access at all reasonable hours upon and into any vessels, ferries, premises or structures, to make examination of any agricultural seeds whether such seeds are upon the premises * * * or in possession of any warehouse, elevator, railway or steamship company; and he is hereby given authority in person or by his inspectors or assistants upon notice to the dealer, his agent or representative of any warehouse, elevator, railway or steamship company, if present, to take for analysis a sample of such agricultural seeds from a parcel, package, lot or other container or number of parcels, packages, lots, or other containers; said sample shall be thoroughly mixed and divided into two samples of at least two ounces each and securely sealed. One of said samples shall be left with, or on the premises of the vendor or party in interest, and the other retained by said director of agriculture or his agent for analysis.

"The said director, supervisor, inspector, and assistants shall be vested with all necessary powers for the proper execution of their duties, including all action or procedure needful to secure evidence of fraud and dishonest dealing in or the fraudulent advertising of seed.

"Prosecutions for violation of this act shall be brought in the proper court by the prosecuting attorney of the county in which said violation occurred, upon complaint of the director, supervisor, inspectors or assistants.

"All moneys received from license fees, fines, costs imposed and recovered under the provisions of this act shall be paid to the director of agriculture, or his agents, and by him paid into the state treasury to the credit of the agricultural seed revolving fund to be used to assist in defraying costs of inspection and analysis and grading of agricultural and vegetable seeds under the provisions of this act.

"The director, supervisor, or inspectors shall have the power whenever he shall deem it necessary to call upon the Attorney General for aid in the prosecution of all cases arising under the provisions of this act.

"Whoever violates any of the provisions named in this act, or who shall attempt to interfere with the inspectors or assistants in the discharge of the duties named herein, shall be guilty of a misdemeanor and upon conviction

shall be fined not less than twenty-five dollars ($25.00) and costs for the first offense and not less than one hundred dollars ($100.00) and costs for the second or any subsequent offense."

Section 2827, as amended, provides:

"It shall be unlawful for any person, firm or corporation to engage in, conduct, or carry on the business of selling, dealing in or importing into this state for sale or distribution any agricultural or vegetable seed, without first having obtained from the director of agriculture and having in force a license so to do. The license fee shall be two hundred dollars ($200.00) for wholesale seed dealers, ten dollars ($10.00) for those engaged in the retail seed business in cities of the first and second classes, five dollar ($5.00) for those engaged in the retail seed business in cities of the third class, and one dollar ($1.00) for all other retailers dealing in agricultural or vegetable seeds: Provided, that no license shall be required of retail seed dealers for handling only seed purchased from a licensed wholesale dealer or seed grown in the state of Washington and purchased from the producer within the state. All licenses shall bear the date of issue and shall expire on the first day of July next following the date of issue. The director of agriculture may publish from time to time, in bulletins or reports, a list of those licensed under this act."

It is the contention of plaintiff that the last-quoted section discriminates against his interests both as a retail dealer and as a wholesale dealer; that as a retail dealer he is required to pay the license fee for selling goods grown out of the state of Washington and transported in interstate commerce, while a competitor selling only seeds grown within the state, purchased from the producer, is exempt from payment of such license fee; that as a wholesaler plaintiff is required to pay the license fee for selling seed purchased outside the state of Washington or else retailers purchasing from him must pay the license fee, while the producer of Washington seeds may sell to a retailer without either of them being required to pay the license fee.

The question before the court is therefore not one where it is claimed that the inspection charge is excessive.

Section 2825, above quoted, plainly shows that the duty imposed upon the director of agriculture is to inspect all agricultural seeds "stored, sold, offered or exposed for sale or distribution within this state for seeding purposes." This is wholly without regard to the origin of such seeds whether within or without the state.

The same section as plainly shows that license fees are to be used in paying the cost of such inspection.

Section 2827 as amended, which imposes a license upon wholesale and retail seed dealers, provides, in part:

"Provided, that no license shall be required of retail seed dealers for handling only seed purchased from a licensed wholesale dealer or seed grown in the state of Washington and purchased from the producer within the state."

The effect of these provisions, if held valid, is to impose upon the Washington dealer in such seeds grown in other states, and brought into this state for sale, the cost of inspection, not only of such goods so brought in, but the cost of inspecting such seed grown within the state which latter may be sold by the retailer, if purchased from the producer without the payment of such license. This discrimination against the seeds of other states, in its essence, places an unwarranted

burden upon interstate commerce, and the statute imposing such burden cannot be upheld under article 1, § 8, subsec. 3, of the Constitution of the United States, granting Congress power to regulate commerce with foreign nations and among the several states and with the Indian tribes.

The interlocutory injunction prayed for will be granted.