## PLYMOUTH COAL COMPANY *v.* COMMONWEALTH OF PENNSYLVANIA.

### ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 102. Argued January 15, 1914.—Decided February 24, 1914.

The business of mining coal is so attended with danger as to render it the proper subject of police regulation by the State.

It is not an unreasonable exercise of the police power of the State to require owners of adjoining coal properties to cause boundary pillars

to be left of sufficient width to safeguard the employés of either mine in case the other should be abandoned and allowed to fill with water.

One attacking the constitutionality of a state statute must show that he is within the class whose constitutional rights are injuriously affected by the statute.

In determining whether the constitutional rights of a party have been affected by a state statute, the courts will presume, until the contrary is shown, that any administrative body to which power is delegated will act with reasonable regard to property rights.

Except in such cases as arise under the contract clause of the Constitution it is for the court of last resort of the State to construe the statutes of that State, and in exercising jurisdiction under § 237, Judicial Code, it is proper for this court to await the construction of the state court rather than to assume in advance that such court will so construe the statute as to render it obnoxious to the Federal Constitution.

If a statute be reasonably susceptible of two interpretations, one of which would render it unconstitutional and the other valid, the courts should adopt the latter, in view of the presumption that the lawmaking body intends to act within and not in excess of, its constitutional authority.

In the absence of clear language to the contrary, a provision for decision by a board in a public matter will be construed to the effect that a majority of such board shall act and decide. *Omaha* v. *Omaha Water Co.*, 218 U. S. 180.

In matters of police regulation where decisions on questions of public safety are delegated to an administrative board the right of appeal on other than constitutional grounds may be withheld by the legislature in its discretion without denying due process of law.

The statute of Pennsylvania requiring owners of adjoining coal properties to cause barrier pillars to be left of suitable width to safeguard employés is not unconstitutional either as depriving the owners of their property without due process of law or as denying them equal protection of the law, or because of the procedure and method prescribed for determining the width of such barrier or because it delegates the matter to an administrative board or does not provide for any appeal thereupon.

232 Pa. St. 141, affirmed.

THIS case involves the constitutionality of a section of the Anthracite Mine Laws of the State of Pennsylvania,

being § 10 of Art. III of the act of June 2, 1891 (Pub. Laws pp. 176, 183), which reads as follows:

"It shall be obligatory on the owners of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, of such width, that taken in connection with the pillar to be left by the adjoining property owner, will be a sufficient barrier for the safety of the employés of either mine in case the other should be abandoned and allowed to fill with water; such width of pillar to be determined by the engineers of the adjoining property owners together with the inspector of the district in which the mine is situated, and the surveys of the face of the workings along such pillar shall be made in duplicate and must practically agree. A copy of such duplicate surveys, certified to, must be filed with the owners of the adjoining properties and with the inspector of the district in which the mine or property is situated."

Art. XVIII, under the head of "Definition of Terms," contains, *inter alia,* the following:

"The term 'owners' and 'operators' means any person or body corporate who is the immediate proprietor or lessee or occupier of any coal mine or colliery or any part thereof. The term 'owner' does not include a person or body corporate who merely receives a royalty, rent or fine from a coal mine or colliery or part thereof, or is merely the proprietor of the mine subject to any lease, grant or license for the working or operating thereof, or is merely the owner of the soil and not interested in the minerals of the mine or any part thereof. But any 'contractor' for the working of a mine or colliery or any part or district thereof, shall be subject to this act as an operator or owner, in like manner as if he were the owner."

The record shows that the Lehigh & Wilkes-Barre Coal Company and the Plymouth Coal Company are respectively the lessees or owners of adjoining coal properties

situate at Plymouth, in Luzerne County, Pennsylvania; that on August 31, 1909, Mr. Davis, the Inspector of Mines of the district in which the properties are located, wrote a letter to the president of the Plymouth Coal Company which reads as follows:

"Wilkes-Barre, Pa., Aug. 31, '09.
"John C. Haddock, Pres. Plymouth Coal Co.

Dear Sir: Kindly have your engineer report at my office Thursday morning Sept. 2nd at 10 o'clock at which time we can meet the engineer of the Lehigh & Wilkes-Barre Coal Company to decide as to thickness of barrier pillar to be left unmined between the properties of the Lehigh & Wilkes-Barre Coal Company and the Plymouth Coal Company, situated at Plymouth, Luz. Co., Pa., as per Article 3, Section 10 Anthracite Mine Laws of this Commonwealth, which reads as follows" [quoting the section *verbatim*].

[Signed] "D. T. Davis,
Inspector of Mines."

To this the following reply was made:

Wilkes-Barre, Pa.,
Sept. 1, 1909.
"Mr. D. T. Davis, Inspector, Ninth Anthracite Inspection District Wilkes-Barre, Pa.

Dear Sir: I am in receipt of yours of the 31st ult.

Allow me to say in reply that while it would give us great pleasure to meet you and the representatives of the Lehigh & Wilkes-Barre Coal Company at the suggested conference, to be held to-morrow, we cannot enter such a conference to even consider, much less conclude an agreement that may affect our rights and our duty to our lessors at the Dodson Colliery.

"I assume it is needless to assure you that we stand

ready at all times to comply with any reasonable request that may emanate from you or your office, but if I am advised correctly, this request or demand originated with the Lehigh & Wilkes-Barre Coal Company.

"This was their right to make as it is ours to decline.

Yours very truly,

[Signed]          JOHN C. HADDOCK,
*President The Plymouth Coal Co.*"

Thereupon, pursuant to Article XV of the above-mentioned statute, the Mine Inspector, acting in behalf of the Commonwealth, filed his bill of complaint against the Plymouth Coal Company in the Court of Common Pleas of Luzerne County, setting forth the above facts and averring that defendant refused to permit its engineer to meet with the Mine Inspector and the engineer of the adjoining property owner to determine the width of the barrier pillar, or to even consider the matter, and refused to leave or cause to be left a pillar that, taken in connection with the pillar to be left by the adjoining property owner, would be a sufficient barrier for the safety of the employés of either mine in case the other should be abandoned and allowed to fill with water; that defendant employed in its mine at least three hundred persons, and the Lehigh & Wilkes-Barre Coal Company employed in its mine at least seven hundred persons, and the refusal of the defendant endangered the lives and safety of the employés of both mines. There was a prayer for a preliminary and perpetual injunction to restrain defendant from working its mine without leaving a barrier pillar of coal of the thickness or width of at least 30 feet in each seam or vein worked by it along the line of the adjoining property. Defendant answered, admitting the truth of the averments of the bill without qualification, except that it denied that any barrier was necessary for the safety of the employés of either mine in case

the other mine should be abandoned. At the same time
it averred that the act of June 2, 1891, upon which the
bill was based "is confiscatory, unconstitutional and
void." There was a preliminary injunction, restraining
defendant from working its mine without leaving a barrier
pillar at least 70 feet wide. This was continued until the
final hearing, which resulted in a decree continuing the
injunction, but without prejudice to defendant's right
"to apply to the court for a dissolution or modification
thereof, upon showing to the satisfaction of the court
that the proper mine inspector and the engineers of the
defendant company and the Lehigh and Wilkes-Barre
Coal Company have, upon due investigation and con-
sultation, determined that a barrier pillar of less width
than that stated in the injunction (that is, less than
seventy feet on defendant's property) is sufficient for the
protection of the men employed in the mines of either
company in case the mine of the other should be aban-
doned and allowed to fill with water, and have made
duplicate surveys and filed copies of the same as required
by law, or, upon such investigation and consultation shall
have decided that no such barrier pillar is necessary to the
safety of the employés of either company in the event
aforesaid."

Upon appeal the Supreme Court of Pennsylvania af-
firmed the decree (232 Pa. St. 141), and the case comes
here by virtue of § 237, Judicial Code, for adjudication
under the "due process" clause of the Fourteenth Amend-
ment to the Federal Constitution.

*Mr. William C. Price* and *Mr. John G. Johnson* for
plaintiff in error:

The complaint of plaintiff in error is made solely on the
ground that the manner and method of fixing the width
of a barrier pillar between adjoining coal properties de-
scribed in the act is unconstitutional, and if allowed to

stand, will be productive of much injustice and consequent litigation. It will be a very simple matter to prepare a barrier pillar act, providing for the safety of employés in mines, by requiring a barrier pillar, the width of which shall be fixed by a competent tribunal, wherein all parties interested may appear after proper notice, with their witnesses and experts, providing also for the right of appeal.

The legislature under the police power of the State may undoubtedly enact legislation requiring coal owners to work their property in such manner as to prevent injury to the property and employés of adjacent owners, but it cannot arbitrarily create a tribunal with power to deprive the coal owner of his property without right of appeal or providing for notice or a hearing or some legal method of procedure, and any legislation without such provisions would be a taking of property without due process of law.

Where any question of fact or liability is conclusively presumed against a party there is not due process of law. *Rutherford's Case*, 72 Pa. St. 82; *Philadelphia* v. *Scott*, 81 Pa. St. 80; *Hancock* v. *Wyoming*, 148 Pa. St. 635; 3 Words and Phrases, 2250; *Kuntz* v. *Sumption*, 2 L. R. A. 655.

A statute authorizing any debt or damage to be adjudged against a person upon purely *ex parte* proceedings, without a notice or any provision for defending, violates the Constitution and is void. *In re Empire Bank*, 18 N. Y. 199, 215; Cooley on Const. Limit., 7th ed. 582; *Stewart* v. *Palmer*, 74 N. Y. 183; *In re Jensen*, 59 N. Y. Supp. 653; *San Matteo* v. *So. Pac. R. Co.*, 13 Fed. Rep. 722. See also *In re Rosser*, 101 Fed. Rep. 562, 567; *Londoner* v. *Denver*, 210 U. S. 373.

Conceding that the right to insist upon barrier pillars being left, was within the police power, the real question in this case is, whether the manner of determination of their

thickness required by the act was by a proceeding which was due process of law.

There was no evidence offered in the court below, nor any determination by it, that such width of pillar was necessary.

The bill rested upon an averment of violation of the act in refusing to appoint an engineer to meet for the purpose of determining the width of the barrier pillar.

The coal ordered to be left unmined in the barrier pillar amounted to 734,147 tons, which could be mined at a net profit of about $300,000.

This prohibition against making use of some $300,000 worth of coal, amounts to a deprivation of property to that extent.

While the legislature may, in the exercise of its police power, compel the reservation of barrier pillars for the protection of life and property, it is not necessary to consider whether, in the exercise of such power, it may prescribe the exact width of the pillar. Sufficient for the present purpose to say that it has not attempted to make any such prescription. In the nature of things, it would have been impossible to do so, because the width of the pillar must, in each case, be determined with reference to the situation of each particular property.

While under certain contingencies certain designated officials may take immediate action required in conservation of health, the present case is not within that class.

While due process of law is not easy to define, no proceeding like the present has even been claimed, much less decided, to be due process. *Holden* v. *Hardy*, 169 U. S. 389; *Davidson* v. *New Orleans*, 96 U. S. 97; *Murray* v. *Hoboken*, 18 How. 276.

Under this act plaintiff in error has been deprived of the use of its property by a decree forbidding such use because of its failure to submit its legal rights to a tribunal unable to determine the same in due process of law.

*Mr. John C. Bell,* Attorney General of the State of Pennsylvania, with whom *Mr. B. R. Jones, Mr. Morris Wolf* and *Mr. William M. Hargest* were on the brief, for defendant in error.

MR. JUSTICE PITNEY, after making the foregoing statement, delivered the opinion of the court.

The statute in question is entitled "An Act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith." It applies to every anthracite coal mine in the Commonwealth employing more than ten persons; divides the anthracite coal region into eight inspection districts, with a mine inspector for each district, who is appointed by the Governor of the Commonwealth upon the recommendation of a board of examiners composed of three reputable coal miners and two reputable mining engineers, all to be selected by judges of the county courts, and the inspector thus appointed must be a citizen of Pennsylvania, more than thirty years of age, having a knowledge of the different systems of working coal mines and at least five years practical experience in anthracite coal mines of Pennsylvania, including experience in mines where noxious and explosive gases are evolved. Each inspector is to reside in the district for which he is appointed, and is to give his whole time and attention to the duties of his office. He is to examine all the collieries in his district as often as may be required, see that every necessary precaution is taken to secure the safety of the workmen and that the provisions of the act are observed and obeyed, and is to keep the maps and plans of the mines and the records thereof with all the papers relating thereto. The act contains a multitude of provisions looking to the safety of the men employed in and about the

mines, and deals apparently with every branch of the work and every source of danger.

That the business of mining coal is attended with dangers that render it the proper subject of regulation by the States in the exercise of the police power is entirely settled. *Holden* v. *Hardy,* 169 U. S. 366, 393; *St. Louis Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, 207; *Barrett* v. *Indiana,* 229 U. S. 26, 29.

Legislation requiring the owners of adjoining coal properties to cause boundary pillars of coal to be left of sufficient width to safeguard the employés of either mine in case the other should be abandoned and allowed to fill with water cannot be deemed an unreasonable exercise of the power. In effect it requires a comparatively small portion of the valuable contents of the vein to be left in place, so long as may be required for the safety of the men employed in mining upon either property.

All of this is very frankly admitted by plaintiff in error, and the criticism upon § 10 of the act is confined to the single ground that the method of fixing the width of the barrier pillar is so crude, uncertain, and unjust as to constitute a taking of property without due process of law.

So far as the record discloses, this particular objection was not brought to the attention of the state courts as a ground for holding the section in question to be unconstitutional. The very general objection raised by plaintiff in error in its answer has been stated. The Court of Common Pleas in its opinion, not treating the mode of defining the pillar as having any bearing upon the constitutional question but dealing with it as a matter of interpretation, said:

"If the constitutionality of this provision be conceded for the purpose of discussion, and if the question of the necessity for any barrier pillar at all between these properties may be regarded as an open one, the decision of that question would seem to be committed by the statute

to the tribunal of experts thereby constituted, viz., the mine inspector and the engineers of the owners of the adjoining coal properties. The purpose of the enactment is to secure the safety of the workmen in the mines. The law declares that 'it shall be obligatory' on the mine owners to leave such a barrier pillar as the tribunal of mine experts referred to shall determine to be sufficient for that purpose. It is for them to fix its width. Until they say that none at all is needed for the safety of the men, the obligation imposed by the statute remains. . . . If, therefore, we may apply the maxim that the law does not require a vain thing, there is room for the construction that, in vesting in the inspector and engineers the power to determine how wide the barrier pillar should be to secure safety, the intent of the law-making power was to also empower them to say, if such be the fact, that the safety of the men does not require a barrier pillar of any width at all. But, be that as it may, it is evident that the act does not warrant a mine owner in refusing to permit his engineer to participate in determining the question of the width of, or the need for, a barrier pillar simply because he, the mine owner, does not consider one necessary. In our opinion, the law requires such a pillar to be left, unless the inspector and engineers, after due examination of the premises and consideration of the subject, determine that none is needed to secure the safety of the men employed in either mine in case the other should be abandoned and allowed to fill with water." 232 Pa. St. 143.

The same view was repeated in the "Conclusions of Law" at the close of the opinion, and evidently afforded the reason for inserting in the final decree a clause reserving to defendant the right to apply for a dissolution or modification of the injunction after action by the statutory tribunal. The Supreme Court affirmed the decree on the opinion of the Court of Common Pleas.

In a later case, *Curran* v. *Delano*, 235 Pa. St. 478, 485, it was held, in effect, that the tribunal created by the statute was to be composed of "two mining engineers and a mine inspector," or, as was said, "three mine experts"; that its jurisdiction was exclusive; and that even the act of one property owner in removing the coal from its mine up to. the boundary line, could not deprive the statutory tribunal of its authority or confer jurisdiction upon a court of equity to determine the width of the boundary barrier. And see *Sterrick Creek Coal Co.* v. *Dolph Coal Co.*, 11 Lack. Jur. 219.

Although the act has been upon the statute book for over twenty years, the cases just cited are, it seems, the only ones wherein the state courts have placed an authoritative construction upon the pertinent section.

The objections of plaintiff in error to the method of fixing the width of the barrier pillar are based upon the supposed uncertainty and want of uniformity in the membership of the statutory tribunal, and upon the fact that the statute does not expressly provide for notice to the parties interested, that the procedure is not prescribed, and that there is no right of appeal.

The Legislature has not defined with precision the width of the pillar, and it is very properly admitted that in the nature of things this would have been impossible, because the width necessary in each case must be determined with reference to the situation of the particular. property. From this it necessarily results that it was competent for the Legislature to lay down a general rule, and then establish an administrative tribunal with authority to fix the precise width or thickness of pillar that will suit the necessities of the particular situation, and constitute a compliance with the general rule. *United States* v. *Grimaud*, 220 U. S. 506, 517–522. Administrative bodies with authority not essentially different are a recognized governmental institution. Commissions for

the regulation of public service corporations are a familiar instance. *Interstate Com. Commission* v. *Railway Co.*, 167 U. S. 479, 495. And it has become entirely settled that powers and discretion of this character may be delegated to administrative bodies, or even to a single individual. *In re Kollock*, 165 U. S. 526, 536; *Wilson* v. *Eureka City*, 173 U. S. 32; *Gundling* v. *Chicago*, 177 U. S. 183, 186; *Fischer* v. *St. Louis*, 194 U. S. 361, 371, 372; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 25; *Lieberman* v. *Van De Carr*, 199 U. S. 552, 560, 562.

But it is insisted that under the language of the act before us the tribunal lacks uniformity and there is uncertainty respecting the manner of its constitution. It is said that on one side of the property line there might be but a single owner, while on the other side there might be several owners, and the engineers representing the latter might outnumber and combine against the representative of the single owner and compel him to leave a barrier pillar of an unreasonable width. This objection is for present purposes sufficiently disposed of by the decisions of the Supreme Court of Pennsylvania which establish that the tribunal is composed of three, namely, the inspector and two engineers. We see no difficulty in working this out in practice. The owner on each side has a single engineer in the make-up of the body; and if there be a subdivision of the property on one side of the line there would no doubt be separate findings with respect to the frontage of each subdivision.

It is objected that the act presupposes a condition which does not always exist, viz., that the owners of coal properties have engineers in their employ; whereas it is insisted that there are many coal owners who employ no engineer, especially among the lessors of coal property. But it cannot be seriously doubted, the business under regulation being so dangerous, that it is within the power of the State to declare that coal mining shall not be conducted

without the employment of an engineer; and we deem it
to be within the competency of the law-making power to
require, also, that notice of such a proceeding be given to
the lessee actually in charge of the mining operations,
leaving the lessor's interest to be represented by him. It
is the lessee whose conduct is to be controlled. The lessor's
interest is not so directly involved, and for the purpose in
hand is not opposed to that of the lessee. It is not a
judicial but a *quasi* legislative proceeding. And if the
lessor desires to participate, it is not to be supposed that
he would have difficulty in obtaining a hearing.

A requirement of reasonable notice to the lessee seems
to be implied in the language of the section. There is to
be a "determination" by a tribunal of which the lessee's
representative is a member. Assuming, as we do, that for
constitutional reasons there must be a fair though sum-
mary hearing, it requires no very clear expression to
justify such a construction of the section as will render
notice obligatory. Certainly this court ought not to adopt
a contrary construction in the absence of something in the
state decisions to require it.

Respecting this and some of the other objections, it
should be said that the difficulties suggested are hypothet-
ical rather than practical. Plaintiff in error had actual
notice in fact, and made no objection on the score of lack
of sufficient notice. Its lessor is not objecting. Plaintiff
in error presumably has an engineer competent to repre-
sent it, or could readily employ one. It refused to enter
the conference for other reasons, and the refusal can be
justified in law only upon the theory that the section is
wholly void.

We may once more repeat, what has been so often said,
that one who would strike down a state statute as violative
of the Federal Constitution must show that he is within
the class with respect to whom the act is unconstitutional,
and must show that the alleged unconstitutional feature

injures him, and so operates as to deprive him of rights protected by the Federal Constitution. *Southern Railway Co.* v. *King*, 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, 550; *Rosenthal* v. *New York*, 226 U. S. 260, 271.

It is to be presumed, until the contrary appears, that the administrative body would have acted with reasonable regard to the property rights of plaintiff in error; and certainly if there had been any arbitrary exercise of its powers its determination would have been subject to judicial review. *Lieberman* v. *Van De Carr*, 199 U. S. 552, 562; *Bradley* v. *Richmond*, 227 U. S. 477, 483.

Indeed, the statute seems to contemplate some judicial control, for it prescribes no penalty for a violation of the findings of the engineers and inspector, nor any mode of enforcing their determination except by a suit for injunction under Art. XV of the act. In such a suit a party deeming himself aggrieved because of arbitrary action by the statutory tribunal may presumably have his opportunity to be heard with respect to this as well as other fundamental defences.

It is objected that the act does not state whether the tribunal must be unanimous in order to reach a determination, or what shall be done in case of disagreement; and it is argued that in case of such disagreement the solution of the question to be determined might be delayed for such a length of time as to embarrass the mining operations and throw the workmen out of employment. Here, again, plaintiff in error seems to be unnecessarily borrowing trouble, but we will deal with the point on its merits. This particular objection does not seem to be met by the decision of the state court, either in the present case, or in that of *Curran* v. *Delano*, 235 Pa. St. 478. They seem to hold simply that the tribunal is made up of three, without deciding what function is to be performed by the respective members, nor how a conclusion is to be reached. That

being so, it is not incumbent upon us to construe the statute in this regard; but rather, to say merely whether the section admits of any reasonable construction that will sustain its constitutionality.

For in cases other than such as arise under the contract clause of the Constitution, it is the appropriate function of the court of last resort of a State to determine the meaning of the local statutes. And in exercising the jurisdiction conferred by § 237, Judicial Code, it is proper for this court rather to wait until the state court has adopted a construction of the statute under attack than to assume in advance that a construction will be adopted such as to render the law obnoxious to the Federal Constitution. *Bachtel* v. *Wilson,* 204 U. S. 36, 40; *Adams* v. *Russell,* 229 U. S. 353, 360.

And, even aside from the consideration just adverted to, it is a general and fundamental rule that if a statute be reasonably susceptible of two interpretations, one of which would render it unconstitutional and the other valid, it is the duty of the courts to adopt that construction which will uphold its validity; there being a strong presumption that the law-making body has intended to act within, and not in excess of, its constitutional authority. *Sinking-Fund Cases,* 99 U. S. 700, 718; *Mugler* v. *Kansas,* 123 U. S. 623, 661; *Knights Templars' Indemnity Co.* v. *Jarman,* 187 U. S. 197, 205; *United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 407.

Approaching the subject from this point of view, we observe first the language of the section—"such width of pillar to be determined by the engineers of the adjoining property owners together with the inspector of the district in which the mine is situated." Attention has already been called to the qualifications of the inspector, and the safeguards surrounding the mode of his appointment. The statute confers upon him most important powers, and gives him access to complete information

respecting the problems that come before him.   There is provision, also, for his removal if neglectful or incompetent, or if guilty of malfeasance in office.

In the clause in question, we think it is quite reasonable to interpret the words "together with the inspector of the district" as meaning that the inspector shall be of the quorum—shall participate in any determination that is made.   But the matter is "to be determined by the engineers . . . together with the inspector."   The phrase of course admits of the interpretation that if the engineers agree, the added approval of the inspector shall end the matter.   We think it not an unreasonable construction that if the engineers disagree they shall submit their differences to the inspector, and that a determination agreed to by one of them in conjunction with the inspector shall fulfill the requirements of the act. It must be remembered that this tribunal is to settle, not a private property right, but a matter affecting the public safety; hence, in the absence of clear language to the contrary, the section is open to the construction that, as in other public matters, a majority of the referees or arbitrators may act.   *Omaha* v. *Omaha Water Co.*, 218 U. S. 180, 192.

It is further objected that the statute provides for no appeal from the determination of the tribunal.   But in such cases the right of appeal on other than constitutional grounds may be conferred or withheld, at the discretion of the Legislature.   As already pointed out, an appeal on fundamental grounds in this instance seems to inhere in the very practice prescribed by the statute for the enforcement of the determination of the statutory tribunal. Were this not expressed in the act, it would none the less be implied, at least so far as pertains to any violation of rights guaranteed by the Fourteenth Amendment.   *Yick Wo* v. *Hopkins*, 118 U. S. 356, 370; *Lieberman* v. *Van De Carr*, 199 U. S. 552, 562.

*Judgment affirmed.*