Johnson, J.,
dissenting. I hold a different view concerning the scaffolding statute involved in this case than that entertained by the. majority of the court.
I join in. the high appreciation everywhere entertained of the Workmen’s Compensation Law. And I conceive it to be the sacred duty of the court to uphold and enforce that law in its letter and spirit. Experience has shown that it provides a beneficent, workable plan to compensate injured workmen and their dependents in accordance with humane and scientific principles, and offers a very substantial escape from the evils which were enmeshed in worn-out, mischievous and wasteful methods so long in use.
Impressed with this sense of duty this court, in many cases, carefully considered, has construed and *37 upheld the. law. Its validity has been sustained and its provisions have been liberally construed in favor of its beneficiaries.
Concerning the term “lawful requirement,” an analysis was made of the constitutional provision and the statute in American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305. It was in that case declared that (a) statutes of the state, (b) municipal ordinances, and (c) orders made by the industrial commission prescribing means or methods to protect the lives, health, safety and welfare of employes, are lawful requirements within the meaning of Section 35, Article. II of the Constitution, and of the "Workmen’s Compensation Law passed thereunder.
In this case it is conceded that the defendant had. complied with the provisions of the Workmen’s Compensation Law and had paid the required premiums into the state insurance fund. The plaintiff, Patten, rests his case on the alleged failure of the employer to comply with a lawful requirement for the protection of the life, health and safety of employes, and his specific claim in that regard is that the company failed to comply with the provisions of Section 12593, General Code.
The pertinent part of that section is as follows:
“Whoever, employing * * * another to do or perform labor in erecting, repairing, altering or painting a house, building * * * knowingly or negligently furnishes, erects or causes to be furnished for erection for and in the performance of said labor unsuitable or improper scaffolding, hoists, stays, ladders or other mechanical contrivances which will not give proper protection, ’ ’ etc. The majority of this court now holds that the pro *38 visions of that section do not constitute a lawful requirement within the meaning of the constitution and statutory provisions touching the subject. They are of the opinion that the terms of the statute are indefinite and not sufficiently specific to bring them within the provision of the constitution and the statute.
Section 35, Article II of the Constitution adopted September 3, 1912, authorizes the passage of laws establishing a state insurance fund to be created by compulsory contribution thereto by employers and taking away any and all rights of actions or' defenses from employes and employers, but no right of action “shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.”
The rationale of the entire plan is that experience has demonstrated that upon just and scientific considerations injuries received by employes in the course of their employment, not wilfully self-inflicted, should be a charge upon the business in which they ai’e engaged — the business being in the line of causation — and provisions for taking away rights of action against employers who were compelled to contribute to the insurance fund were regarded as equally just and essential to the validity of the plan, unless the injury was caused by the wilful act of the employer or his agents, or from failure to comply with any lawful requirement for protection of employes.
In American Woodenware Mfg. Co. v. Schorling, supra, the employe complained of the negligence of *39 his employer in permitting a load of lumber to be piled on a truck so that it toppled over and injured him while in the performance of his work. It was contended that this act of negligence constituted a failure to comply with a lawful requirement, within the meaning of the constitutional provision above referred to and within the provisions of Sections 15 and 16 of the Industrial Commission Act, 103 Ohio Laws, 95.
In the opinion the constitutional amendment and the commission act were discussed, and this court said, at page 313: “If the failure to comply ‘with a lawful requirement’ includes an act which was actionable negligence simply because of the rules of common law, then the portion of the section [Section 35] which authorizes the taking away of any or all rights of action or defenses of employes and employers would be practically meaningless and inoperative. We should be holding that embodied in the same section was power to take away nil rights of actions or defenses of employes and employers, and also a practical denial of power to take away cmy right of action.” Other reasons equally conclusive were pointed out in the statute, and it was held in the third proposition of the syllabus that “The term ‘lawful requirement’ as used in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act (103 O. L., 84), doés not include a general course of conduct, or those general duties and obligations of care and caution which rest upon employers and employes, and all other members of the community, for the protection of life, health and safety.”
*40 As to Sections 15 and 16 of the Industrial Commission Act the court held in the second proposition of the syllabus that “The Industrial Commission Act (103 O. L., 95) provides for the creation of an administrative board with power to supervise all places of employment, to prescribe general rules and requirements concerning all employments and places of employment and particular orders and requirements for particular employers and places of employment, to secure the lives, health, safety and welfare of every employe in such employments, and every frequenter of such places of employment. The purpose and intent of Sections 15 and 16 of the act was to bring all employers within the scope of the jurisdiction and authority of the commission and to impose on them the obligation to comply with the orders and requirements of the commission when duly made. The provisions of Sections 15 and 16 are not the la'wful requirements referred to by, and within the meaning of, Section 35, Article II of the Constitution. ”
It was also held that “By the provisions of Section 25 of the Industrial Commission Act an order made by the industrial commission to employers generally or to a particular employer, with reference to safe employment or place of employment, is a lawful requirement (until altered in the manner provided for in the act), for failure to comply with which, or with any statute or municipal ordinance prescribing means or methods required to be used to protect the lives, health, safety and welfare of employes, the employer under the proviso contained in Section 35, Article II of the Constitution, and Section 29 of the Workmen’s Compensation Act, is liable to an employe injured by reason of such failure. ’ ’
*41 It is. perfectly clear that the framers of th;e constitutional amendment intended to provide for the creation of a fund to which employers should be compelled to contribute, and that, at the same time, in recognition of. such contribution, rights of actions against them should be taken away, except for the failure of the employer to comply with any lawful requirement for the protection of the employes, or for the employer’s wilful acts.
It is equally manifest that as above shown it was not intended that, the term “lawful requirement” should include the duties and obligations of care and caution which rest upon employers for the protection and safety of employes under the common law, because in that case the provision for taking away rights of action would be absolutely inoperative and meaningless. Such holding would violate every canon of constitutional construction. It would be compelling employers to malee contributions to a fund without furnishing them any protection whatever or serving any purpose in. recognition of their constitutional rights. It would violate the spirit of fair dealing and justice which underlies our system of jurisprudence.
The Industrial Commission Act was passed within a few weeks after the Workmen’s Compensation Act was passed. Its evident purpose was to provide effective assistance in the accomplishment of the beneficent purposes of that law. Obeying rules of constitutional and statutory construction, whose value and soundness are nowhere denied, it was found that the Workmen’s Compensation Act and the Industrial Commission Act were in complete harmony.
*42 In the Schorling case there was presented simply a common-law action in negligence. In this case the plaintiff predicates his action upon the failure of the employer to comply with the requirements of a statute of the state, which he contends is a lawful requirement within the constitution and the statute.
This court now holds that the provisions of the statute do not constitute a lawful requirement within the meaning of the Constitution of Ohio, and the Workmen’s Compensation Law.
It is the opinion of the majority that the terms of the statute are general and indefinite and not sufficiently specific to bring them within the constitutional provision. It is said that no criterion of specific conduct or definite requirement is made, and that it prescribes merely a general course of conduct on the part of the employer touching the subject.
It is contended that it is a penal statute, and that if a criminal proceeding is brought under it its terms are hot sufficiently definite and certain to advise the defendant whether he has committed a criminal act.
It is of course conceded that in a criminal proceeding the defendant is entitled to be advised of the nature of the crime with which he is charged. There is no need to discuss that fundamental guaranty.
As already stated, it was held in the Schorling case that the term “lawful requirement,” as used in Section 35, Article II of the Constitution, does not include a general course of conduct or those general duties or obligations of care which rest upon employers and the other members of the community. But it is therein pointed out that an order made by the industrial commission to employers generally, or to *43 a particular employer, iu accordance with the provisions of Section 25 of the Industrial Commission Act, and any statute or municipal ordinance prescribing means or methods required to be used to protect the lives, health, safety and welfare of employes., are Imvful requirements for the violation of which an employer under the terms of the constitutional amendment is liable to an employe injured by reason of such failure.
Now, consider the section involved in this case, Section 12593, General Code. It is a special statutory provision relating to one particular subject, namely, the erection of scaffolding to be used in constructing, repairing, altering or painting buildings, and directs specific attention to the selection and construction of hoists, stays, ladders., or other mechanical contrivances connected with the scaffolding, and provides that whoever knowingly or negligently furnishes unsuitable or improper scaffolding, hoists., stays, ladders, or other mechanical contrivances, which will not give proper protection, shall, etc.
The claim of the plaintiff in this case is that the defendant knowingly and negligently furnished a defective plank upon which he stood while he was working, by the breaking of which he was injured. "Would it be contended that there is any employer who would not understand clearly that the provisions of this statute would impose a penalty upon him if he furnished an employe a defective plank upon which to stand while painting a house from a scaffolding? In this connection it is important to note that the rule is well settled that one attacking the validity of a statute must show that it affects him injuriously. *44 Jeffrey Mfg. Co. v. Blagg, 235 U. S., 571, 576; Plymouth Coal Co. v. Commomoealth of Penna., 232 U. S., 531, 544; Huff v. Bidwell, 180 Fed. Rep., 374, and 12 Corpus Juris, 762.
When plaintiff alleges in his petition that the furnishing of that defective plank was the proximate cause of his injury, do the statute and the allegation leave the defendant in any state of uncertainty, or do they invite the court and jury to begin an excursion into uncertain or doubtful fields?
It is said that this statute is merely declaratory of the requirement of the common law. That is true, and it is equally true that if there had been no Workmen’s Compensation Law, and no statute, the plaintiff would have been entitled to maintain his action on the same allegation that defendant had knowingly and negligently furnished a defective plank upon which it required its employes to stand. Precisely the same testimony would have been introduced. No one would have contended that the legal obligations asserted against the defendant in that case were so uncertain and indefinite as not to be comprehended within the humane obligations and requirements of the common law. But the legislature has seen fit to embody the same duty and the same obligation and requirement in the statutory law of the state. In other words, the legislature has made it a lawful requirement, and the legal liability flows out of this statute, although it is a penal statute.
An observation that is very pertinent here was made by Judge Taft in Narramore v. C., C., C. & St. L. Ry. Co., 96 Fed. Rep., 298, which concerned an Ohio statute for the protection of employes. It was *45 a penal statute and did not expressly give a cause of action in favor of an injured person. Judge Taft said, at page 300: “It was passed in pursuance of the police power of the state, and it expressly provided, as one mode of enforcing it, for a criminal prosecution of the delinquent companies. The expression of one mode of enforcing it did not exclude the operation of another, and in many respects moire efficacious, means of compelling compliance with its terms, to-wit, the right of civil action against a delinquent railway company by one of the class sought to be protected by the statute for injury caused by a failure to comply,with its requirements.’'
In Leis v. Cleveland Ry. Co., 101 Ohio St., 162, it was held that “An ordinance which requires a motorman or other person having charge of a street car to exercise all possible care and vigilance on approaching any other ear that has stopped for the purpose of receiving or letting off passengers, or which requires that any car approaching another car which has been stopped for any purpose, or approaching a curve, shall do so with the greatest care and be under complete control of the person operating the same, is a reasonable and valid ordinance.”
In the opinion in that case, upholding the ordinance, at page 171, it is said concerning the section involved in the case now before us: “Section 12593, General Code, provides that employers shall be fined if they provide unsuitable and improper scaffolding, hoists, stays, ladders, or other mechanical contrivances which will not give proper protection to the life or limb of a person so employed. This statute was enforced by the United States courts of this dis *46 trict, McWeeney v. Standard Boiler & Plate Co., 210 Fed. Rep., 507, which case was later affirmed by the United States court of appeals.”
It is further said in the opinion, at page 171: “No motorman or conductor can read either of the ordinances without a perfectly clear understanding of what is expected of him. The company which employs him is entitled to go to the jury and prove every one of the things done by him at the time of the injury complained of. It is permitted to show that he exercised every possible care and vigilance under the circumstances of the case.”
So in this case, as already stated, the company could not be in doubt or uncertain as to the exact duty required of it by the statute concerning any particular thing done in connection with the scaffolding, and the defendant was entitled on the trial of the case to show that it did not knowingly or negligently furnish the plank, the breaking of which injured the plaintiff.
In State v. Schaeffer, 96 Ohio St., 215, which is a criminal case, Section 12603, General Code, prohibiting the operation of a motor vehicle “at a speed greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of any plerson” was upheld against similar attacks.
In Neave Building Co. v. Roudebush, Admr., 96 Ohio St., 40, an ordinance of the city of Cincinnati requiring owners of buildings to equip windows above the second-story with a suitable device which *47 would permit the cleaning of the exterior of such windows without endangering life and limb was enforced.
It is a matter of common knowledge that scaffolding used in painting houses and buildings is of a temporary and changing character. It is constantly being moved. Its erection is done by the employes themselves, as a general thing, and it is difficult to see how a statute concerning such a thing could be more definite than this statute is., and yet meet the requirements of the varying circumstances and conditions surrounding a structure of this nature.
I am convinced that the holding in this case will be very apt to operate as an invitation to courts and counsel to search for technicalities and make overnice distinctions in the language of statutes touching this and kindred subjects in support of their contention that the provisions of a particular statute do not with sufficient definiteness and certainty meet the particular circumstances of the particular case. No such thing was intended by the framers of Section 35, Article II of the Constitution, and no such meaning was intended to be given to the words “lawful requirement. ’ ’ They did intend that rights of action arising out of negligence or want of ordinary care under the rules of the common law should be taken away as against employers who were compelled to contribute to the state fund. But they intended that when the legislature was not content to allow such a duty to remain a mere common-law duty, but saw fit to embody the requirement within the statutory law of the state by special statute, with requirements touching the specific subject, that fact itself' consti *48 tuted it a lawful requirement, and if such a statute does not violate the requirements of reasonable certainty and definiteness and does not otherwise violate the requirements of valid and constitutional enactments it must be enforced.
The retention of liability by the employer for his wilful acts and for his failure to comply with lawful requirements made for the protection of employes is a vital element in the whole conception and scheme of the Workmen’s Compensation Law.
It is of equal importance with the taking away of liability for ordinary common-law negligence in return for the burdens imposed on the employer.
If rights of action for such wilful acts and such failure were also taken away the salutary warning and influence which leads heedless men to safeguard their employes would, be removed. Thereby the number of injuries would be increased, the strength and integrity of the insurance fund would be weakened, and the humane object of reducing injuries and ' safeguarding life and limb would be largely defeated.
Now, in this ca.se the issues of fact as to the negligence of the defendant, which were made by the pleadings, related to the plank upon which the plaintiff stood. The plaintiff claimed that the plank was defective and that this defective plank was knowingly or negligently furnished by the defendant. By the breaking of this plank the plaintiff was injured. Upon these issues the burden rested upon the plaintiff.
. The undisputed testimony showed that the plaintiff himself was present and participated in the selection of the plank and helped to construct the scaffold. *49 The testimony on his. behalf, was tQ the effect that the plank looked good and sound and contained no defects which were apparent.. .
The case has been decided by this court solely oh the law question which I have discussed. Counsel for defendant in error contend that there was no evidence tending to show that the defendant company knowingly or negligently furnished the. plank or erected the scaffold upon which the plaintiff stood, and that, therefore, the trial court should have sustained its motion to direct the jury to return a verdict for the defendant independently of the legal question discussed. The court of appeals in the performance of its duty to weigh the evidence did not find that the verdict was against the weight of the evidence.
In the view I take of, the scaffolding statute, as above set forth, it follows that the court of appeals should pass upon the weight of the evidence. In my opinion the cause should now be remanded to the court of appeals with instructions to consider and pass upon the weight of the evidence in the case.