## AUSTIN–WESTERN ROAD MACHINERY CO. v. FAYETTE COUNTY, GA.

### No. 8689.

Circuit Court of Appeals, Fifth Circuit.

Nov. 8, 1938.

566

Bruce F. Woodruff and J. Mallory Hunt, both of Atlanta, Ga., for appellant.

Elbert P. Tuttle, of Atlanta, Ga., and R. O. Jones, of Newnan, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellant, Austin-Western Road Machinery Company, sued Fayette County, Georgia, for the contract price of certain road machinery, losing the case through a verdict directed for the defendant on the ground that the contract for the machinery created a debt prohibited by the Georgia Constitution, Art. 7, § 7, Par. 1.

The undisputed evidence on that point is that the County on April 5, 1932, the date the contract was made and the ma-

chinery delivered and a warrant issued for its payment, had no cash on hand but could lawfully lay a tax for road purposes that year which would pay for it if supplemented by only a few hundred dollars of $1500 which was the County's part for the preceding quarter of a tax laid by the State on sellers of gasoline, which was due to be distributed not later than April 15th, and was in fact received by the County Treasurer on that day. The question is whether this $1500 can be counted as money available so as to save the purchase from being a debt within the meaning of the Constitution.

Since the financial scheme for the counties set up by the Constitution is that they shall operate each year not wholly on a cash basis but on the taxes in prospect for that year, it has long been settled that no prohibited debt is created if the obligation can be met during the year either by money on hand which can lawfully be thus used, or by a levy of a sufficient tax for the purpose. City Council of Dawson v. Waterworks Co., 106 Ga. 696, 703, 32 S. E. 907; Butts County v. Jackson Banking Co., 129 Ga. 801, 60 S.E. 149, 15 L.R.A., N.S., 567, 121 Am.St.Rep. 244. The tax meant is one which the County itself may levy, calculated to raise a definite sum, and uncertain only in the possible failure to collect. The gasoline tax is not such, because the State levies it and its amount is wholly uncertain, for it depends on how much gasoline may be sold in the State. It has been held that these factors prevent the counting of the gasoline tax which the County may expect to receive in determining a question such as we have here. Neal & Son v. Burch, Commissioner, 173 Ga. 840, 162 S.E. 135; Taylor v. Lovett, 184 Ga. 295, 191 S.E. 113. These cases however involved mere estimates of the future collections of the gasoline tax for the year, and were rested on the case of Gulf Paving Co. v. City of Atlanta, 149 Ga. 114, 99 S.E. 374, which itself cited Tate v. City of Elberton, 136 Ga. 301, 71 S.E. 420. In the Tate Case it was held that on the question of creating a debt a city could not count such uncertain sources of anticipated revenue as probable profits in furnishing water and electric lights, and fines and forfeitures in its recorder's court. In the Gulf Paving Case it was sought to rely on a sum of money which Fulton County had "appropriated" but not paid over to the City of Atlanta. The court cited Howard v. Early County,

104 Ga. 669, 30 S.E. 880, and DeVaughn, Commissioner v. Booten, 146 Ga. 836, 92 S.E. 629, to show the County probably had no lawful right to pay over the money, and then cited the Tate Case to show that expected but uncertain funds could not be counted to prevent the obligation from being a debt. The present case is easily distinguishable from all these. The gasoline tax, though too uncertain to be relied on before it is collected by the State, is required by the State law to be apportioned among the counties at the end of each quarter and remitted to them by the Treasurer by the 15th of the succeeding month, to be used only for road purposes. Acts 1923, p. 41; Acts 1925, p. 66; Acts 1927, p. 104. On April 5th the collections for the preceding quarter ending March 31st had been made and were in the State Treasury. There was only a mathematical calculation necessary to ascertain the exact amount belonging to Fayette County, and the Treasurer was under a duty, which could promptly be enforced by mandamus, to make the calculation and distribution by April 15th, as he did do. If the contract had been made and the warrant issued April 15th, it is conceded they would have been valid, though full payment could not be made till the road taxes should be collected in the fall. It is too great a refinement to say that the contract and warrant are an unlawful debt on April 5th, the only difference being that on that date the State Treasurer had not remitted to Fayette County the tax money in his hands which belonged to it, and which he was bound to remit. Such money in the State's Treasury is so certainly available to meet the County's needs that it should be considered as in the County Treasury. In point of fact, a county seldom has any money in its treasury, and indeed seldom maintains any such place. Its money is deposited in some bank as a depository. By Ga.Code, § 23-1017, county treasurers are authorized to deposit in banks which are State depositories, and Sec. 23-1019 authorizes the collection of interest on the deposits. This of course means that the deposits are general deposits, in law loans to the bank. There is more chance of the bank failing or delaying payment than there is of the State Treasurer so doing. We think that if the county has money either in a depository or in the State Treasury it is money on hand as if in the County Treasury for the purposes now under discussion. No unconstitutional debt is shown to have been created in this case.

But it is argued that for another reason the judgment was right, towit, that the contract and warrant were signed by only two of the County Commissioners, the law requiring action by three. This point was ruled against the County below, and there is no cross-appeal, but we will consider it. The statute creating the Board of Commissioners for Fayette County, Acts 1872, p. 418, § 1, makes the Board to consist of five members, and provides: "It shall require three of said commissioners to form a quorum for the transaction of business, and three must concur to pass any order or decree." Section 4, p. 419. Another provision is: "A majority of the same may convene a session," section 7, and still another: "The Treasurer of the county aforesaid shall not disburse or pay out any of the funds of the county treasury on any order, unless the same shall have been first countersigned by a majority of the commissioners." Section 8. Since three are a majority of five, these provisions were not in conflict, and they indicate the Legislature had in mind the general rule of law that where a public board consists of three or more, a majority may validly act. Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 34 S.Ct. 359, 58 L.Ed. 713; Cooley v. O'Connor, 12 Wall. 391, 20 L.Ed. 446; Beall v. State, 9 Ga. 367; See also Georgia Code, § 102-102(5). Later, by an independent and not an amendatory Act, the Board was "reduced from five to three, one of whom shall be the ordinary of said county, who shall be ex-officio a member and chairman of said board," and conflicting laws and parts of laws were repealed. Acts 1901, p. 241. Two and not three are now a majority of the Board, and there is room for question whether the last Act leaves the requirement still in force that three shall be necessary to a quorum and that three must concur in any order or decree. That would introduce a new rule, a rule of unanimity, at war with the other quoted references to a majority. The practice under the Act for the past thirty-five years ought to be of persuasive value, but there is no evidence of it except what was done in this instance. It appears that the order for and acceptance of the machinery were signed April 5th by two Commissioners. On the same day the warrant was issued, countersigned by the same two. On that day, also, the order and acceptance were put on the minutes, as they must be to become a binding county contract, Ga.Code,

§ 23-1701, and endorsed with this entry: "Recorded Com.Min.Book, April 5, 1932. W. L. Burch, Chmn. Bd. and Clerk Commissioners Fayette County, Ga." Burch was the third Commissioner, and it would seem from his entry that he was present on April 5th, and though he did not for some reason sign the contract and warrant, he did without any protest record it on the minutes as a valid contract. He either intended to approve and ratify it, or else thought it valid without his concurrence. We are unable to say the jury would be bound to find that the contract was that of two Commissioners only, if it be true that three are requisite. We think it well to permit on another trial evidence of the practice under the Act of 1901 before finally deciding on its construction.

The judgment is reversed, and the cause remanded for further consistent proceedings.