## STANDARD STOCK FOOD COMPANY *v.* WRIGHT, STATE FOOD AND DAIRY COMMISSIONER OF IOWA.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 222.   Argued April 24, 1912.—Decided June 10, 1912.

*Savage* v. *Jones, ante,* p. 501, followed to effect that it is within the police power of a State to prevent imposition upon the public and to that end to require the disclosure of ingredients of food for stock.

Where the fair import of the provisions of a state police statute is that the fees exacted are for necessary expenses of inspecting an article properly the subject of inspection, and the bill alleges no facts warranting a conclusion that the charges are unreasonable as compared with the cost, this court will not condemn the statute as an unconstitutional revenue measure.

One attacking a state statute as unconstitutional must show that he is within the class whose constitutional rights are invaded, and one admittedly doing a large business cannot be heard on the plea that the act discriminates against those doing a small business.

The Iowa statute of 1907 regulating the sale of concentrated commercial feeding stuff is not unconstitutional as depriving vendors of such stuff of their property without due process of law, or because it is a revenue measure in disguise.

THE facts, which involve the construction and constitutionality of the provisions in the statutes of Iowa relative to sale of feed for stock, are stated in the opinion.

*Mr. F. H. Gaines,* with whom *Mr. E. G. McGilton, Mr. Sidney W. Smith* and *Mr. A. L. Hager* were on the brief, for appellant:

The tax imposed is a license fee and therefore void as a violation of the commerce clause of the Federal Constitution. *Brown* v. *Maryland,* 12 Wheat. 419; *Robbins* v. *Shelby County,* 120 U. S. 489; *American Fertilizer Co.* v. *Board of Agriculture,* 43 Fed. Rep. 609; *Lee Co.* v. *Webster,* 190 Fed. Rep. 353.

To require a manufacturer or one importing goods into a State to pay a tax before he has the right to sell his products within the State, is a tax on interstate commerce, and such legislative enactment of a State is void. *Lyng* v. *Michigan,* 135 U. S. 161. See, also, *Leisy* v. *Hardin,* 135 U. S. 100; *McColl* v. *California,* 136 U. S. 104; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Dooley* v. *United States.* 183 U. S. 151.

The Iowa statute specifically requires manufacturers, dealers, importers, etc., without the borders of the State, to pay into the state treasury $100 each year before he is permitted to sell or offer for sale his products within the State. This is so clearly an attempt to levy a tax upon interstate commerce for the privilege of doing such business within the State, that no attempt will be made to sustain it, except on the assumption that such tax is an inspection fee, and therefore valid as an exercise of the police power of the State.

The statute nowhere contemplates an inspection of complainant's products before sale, and hence the license fee cannot be sustained upon the ground that it is to cover the cost of inspection. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Turner* v. *Maryland,* 107 U. S. 38.

The license fee imposed by the State is not an inspection fee and cannot be sustained upon that ground. It is not made so by statute, and the requirement that the manufacturer, etc., shall pay a fixed sum before he sells his goods in the State, is a charge for the privilege of selling them, and hence a license fee.

An inspection fee cannot be determined in advance by a lump sum.

Conditions of sale which a State may prescribe do not include a right to exact a fee or license for the privilege of vending articles of commerce within the State, and herein lies the difference between an inspection fee which the State has the right to exact, and a license fee which is prohibited by the Constitution. An inspection fee is exacted to cover the cost of the performance of a certain duty of state officials preceding the sale of the proposed article to the public and in order to ascertain whether or not it is meeting the requirements of the State in its sale. A license fee is imposed as a condition precedent to the sale of a product and for the privilege of permitting it.

The prohibition of the commerce clause of the Constitution is direct and positive. The State cannot tax an article of commerce except only to cover a proper inspection of such article before it becomes an article of commerce within the State. *Pabst Brew. Co.* v. *Crenshaw*, 198 U. S. 17; *Vance* v. *Vandercook*, 170 U. S. 438.

To permit a State to tax commerce to provide a fund to enforce its police laws or to punish those who disobey them would destroy in substance the prohibition of the Constitution.

A State has not the power to require the maker of any wholesome product, that contains nothing injurious whatever and is not and cannot be from its very nature an imitation of something else, to disclose not only the ingredients but the percentages of such wholesome ingredients.

Such a formula where no fraud is perpetrated, is as much

entitled to the protection of the law as the good will of a business or an ownership in land.   *Mugler* v. *Kansas*, 123 U. S. 206.

The act of Congress of June 30, 1906, specifically exempts proprietors or manufacturers of proprietary food stuffs which contain no unwholesome added ingredients from disclosing their trade formula.   To require such disclosure by the State is in effect to supersede and annul the act of Congress.

The act of the Iowa legislature in so far as it sought to compel complainant to pay a tax of one hundred dollars for the privilege of doing business in the State, and to set forth upon the outside of the package or container of its product the percentage or percentages of the diluent or base, is void.

*Mr. George Cosson*, Attorney General of the State of Iowa, with whom *Mr. Henry E. Sampson* was on the brief, for appellee:

The validity of the act must be determined not by the casual use of any word or phrase, but by its necessary and obvious result, and the purpose for which it was framed.   *Henderson* v. *New York*, 92 U. S. 259; *Minnesota* v. *Barber*, 136 U. S. 319.

The requirements of the act are not for the mere purpose of raising revenue or placing a burden upon the business of dealers in commercial feeding stuffs.   There is hardly a section in the entire act which does not contain some provision looking to the protection of the public against fraud and deception.

One of the objects of inspection, so far as it applies to domestic sales, is to protect the community from fraud and imposition.   *Clintsman* v. *Northrup*, 8 Cow. 46.

Elements of inspection include quality of the article, form, capacity, dimensions, weight of package, the mode of putting up, marking and branding of various kinds; but

it is not necessary for all these elements to coexist to make a valid inspection law. *Turner* v. *Maryland,* 107 U. S. 38. And see *McLean* v. *Denver,* 203 U. S. 38.

Inspection need not be made before the goods become articles of commerce. *Neilson* v. *Garza,* 2 Woods, 287; *Clintsman* v. *Northrup,* 8 Cow. 46, do not apply.

The words "imports" and "exports" as used in Art. I, § 10 of the Constitution, have been held to apply only to articles imported from or exported to foreign countries. *Woodruff* v. *Parham,* 8 Wall. 123; *Pittsburg &c. Coal Co.* v. *Louisiana,* 156 U. S. 590, 600; *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 350.

The scope of inspection laws is very large and is not confined to articles of domestic produce or manufacture, or to articles intended for exportation, but applies to articles imported and to those intended for domestic use as well. *Neilson* v. *Garza, supra.*

Inspection laws may operate as well on importations as exportations. *Patapsco Guano Co.* v. *North Carolina, supra.*

Where the receipts from inspection fees are found to average largely more than enough to pay the expenses, the presumption is that the legislature will moderate the charge. *Patapsco Guano Co.* v. *North Carolina,* supra; *McLean* v. *Denver & R. G. R. R. Co.,* 203 U. S. 55.

Even though the act may discriminate against the manufacturer doing a small amount of business in the State who is required to pay a fee equal to that done by the large manufacturer doing a large business, as complainant herein, this objection to the statute cannot be raised by the appellant for the reason that it is to his advantage and not disadvantage. *Turpin* v. *Lemon,* 187 U. S. 51; *Hooker* v. *Burr,* 194 U. S. 415, 419; *Southern Ry. Co.* v. *King,* 217 U. S. 524, 534; *Collins* v. *Texas,* 223 U. S. 281, 295; *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *People* v. *Olson,* 215 Illinois, 620, 623.

The fact that each and every package is not inspected will not invalidate the act. *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17, and *Vance* v. *Vandercook*, 170 U. S. 438, distinguished; and see *Frazier* v. *Warfield*, 13 Maryland, 279; *State* v. *Bixman*, 162 Missouri, 34.

The law is not invalid because the fee is prescribed in a lump sum. *Tennessee* v. *Bank of Commerce*, 53 Fed. Rep. 735.

It is the ultimate result which is to govern, that in the final analysis the fee must be paid by some person or corporation, and necessarily by either the seller or the purchaser, and therefore the form of the imposition of the fee should not in and of itself invalidate an act. *Cinn. Gas Light Co.* v. *State*, 18 Oh. St. 245; 22 Cyc. 1366.

The law was framed to meet a condition which existed and not a theory. It was so worded as to meet the exigencies of a particular situation, and is not void because thereof. *McClain* v. *Denver & R. G. R. R. Co.*, 203 U. S. 38; *Missouri Pac. Ry.* v. *Mackey*, 127 U. S. 205.

If the act bears a real relation to the object to be accomplished, the method of its accomplishment is for the legislature. *Jacobson* v. *Massachusetts*, 197 U. S. 11; *St. Louis & I. M. Ry.* v. *Taylor*, 210 U. S. 295.

The act is not invalid because it requires, among other things, a labeling so as not to deceive the purchaser, and a setting forth of the percentage of the diluent or base of the product.

The constitutionality of an act cannot be determined upon the particular practice during a particular time of a particular company engaged in the manufacture and sale of stock food. The legislature in the passage of the act under its police power determined that there was an evil to correct; that stock food companies manufactured and sold false, fraudulent and adulterated stock foods and labeled the same so as to mislead and deceive the purchasers, and that if this practice was so common among

other stock food companies as to require the passage of an act in question, there must be some information contained upon the package to the end that the purchaser may know what he is buying, and unless the percentage of the diluent or diluents or bases is stated upon the package, there will be great opportunity for fraud and deception. *Heath & Milligan* v. *Worst*, 207 U. S. 338; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, 12; *Stilz* v. *Thompson*, 44 Minnesota, 271. And see also: *Patterson* v. *Kentucky*, 97 U. S. 501; *Arbuckle* v. *Blackburn*, 113 Fed. Rep. 616, 627, affirmed, 191 U. S. 405.

The act is not void by reason of its conflict with the law of the United States enacted by Congress June 30, 1906. It is merely supplementary to the Federal law and covers a field which is not covered by the act of Congress and concerning which Congress would not have the power to legislate. *United States* v. *New Bedford Bridge*, 27 Fed. Cas. 97, No. 15,867; *Plumley* v. *Massachusetts*, 155 U. S. 461, 472; *Crossman* v. *Lurman*, 192 U. S. 189, 198; *Bowman* v. *Chicago &c. Ry. Co.*, 125 U. S. 465, 501.

The Constitution of the United States does not declare that an inspection fee to be valid must be prescribed in one form alone. It permits the States to levy a sufficient amount to execute its inspection laws, but does not define the method in which the amount may be collected. *Brown* v. *Maryland*, 12 Wheat. 419.

This court is not clothed with authority and jurisdiction to declare unconstitutional an act of a state legislature because it is not couched in stereotyped language, or because the court might consider that it was illogical in its arrangement. 5 Elliott's Debates, 428; *Hylton* v. *United States*, 3 Dall. 171; *Sinking Fund Cases*, 99 U. S. 717; *Holden* v. *Hardy*, 169 U. S. 366; *Commonwealth* v. *Alger*, 7 Cush. 53.

The whole act discloses the fact that its relation to interstate commerce is incidental.

If there is any doubt as to the constitutionality of the act, that doubt should be resolved in the interests of the people of the State. *Atkins* v. *Kansas*, 191 U. S. 223.

Mr. Justice Hughes delivered the opinion of the court.

The Standard Stock Food Company, a Nebraska corporation, brought this suit against the State Food and Dairy Commissioner of Iowa to restrain the enforcement of a statute of Iowa effective July 4, 1907 (Code of Iowa, Supplement 1907, §§ 5077-a6–5077-a24), relating to the sale within the State of "concentrated commercial feeding stuffs," upon the ground that it was repugnant to the interstate commerce clause (§ 8, Art. I), and to the Fourteenth Amendment, of the Constitution of the United States. Demurrer to the bill was sustained by the Circuit Court and the complainant appeals.

It was alleged in the bill that the appellant's product was a "condimental stock food," sold in Iowa and other States under the trade-name of "Standard Stock Food;" that it was prepared pursuant to a secret formula of great value, contained nothing deleterious or poisonous, and had "condimental and tonic properties and powers which aid animals in the digestion of food." It was further alleged that it was made in Nebraska and shipped into Iowa, where it was sold in the original packages either by agents of the appellant or by dealers.

The act required that each package of the described articles should have affixed thereto in a conspicuous place on the outside, a printed statement giving certain information. The substance of this requirement, with respect to its products, is thus stated in the appellant's argument:

"The package or container of such products shall have printed on the outside thereof:

"First. The number of net pounds of feeding-stuffs in the package.

"Second. The name, brand or trade-mark under which the article is sold.

"Third. The name and address of the manufacturer, importer, dealer or agent.

"Fourth. The place of manufacture.

"Fifth. The name and percentage of any deleterious or poisonous ingredient or ingredients.

"Sixth. The name and percentage of the diluent or diluents or bases" (§§ 1, 2).

The statute also contains the following provision (G. A., c. 189, § 5):

"Before any manufacturer, importer, dealer or agent shall offer or expose for sale in this state any of the concentrated commercial feeding-stuffs defined in section three (3) of this act, he shall pay to the state food and dairy commissioner an inspection fee of ten cents per ton for each ton of such concentrated commercial feeding-stuffs sold or offered for sale in the state of Iowa for use within this state; except that every manufacturer, importer, dealer or agent for any condimental, patented, proprietary or trademarked stock or poultry foods, or both, shall pay to the state food and dairy commissioner, on or before the fifteenth day of July of each year, a license fee of one hundred dollars ($100.00) in lieu of such inspection fee. Whenever the manufacturer or importer of such foods shall have paid the fee herein required, no other person or agent of such manufacturer or importer shall be required to pay such license fee."

The appellant challenges the constitutional validity of the statute in these two particulars: (1) The requirement that the name and percentage of the diluent or diluents or bases shall be stated, and (2) the exaction of the fee of one hundred dollars.

1. With respect to the first question the case in its essential features is not to be distinguished from that of *Savage* v. *Jones*, decided June 7, 1912, *ante*, p. 501, and

nothing need be added to what was there said. It was competent for the State, in the exercise of its power to prevent imposition upon the public, to require the disclosure to which objection is made. The provision was not an unreasonable one and the effect upon interstate commerce was incidental only. *Plumley* v. *Massachusetts*, 155 U. S. 461; *Hennington* v. *Georgia*, 163 U. S. 299, 317; *Missouri, Kansas & Texas Ry. Co.* v. *Haber*, 169 U. S. 613; *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 345, 361; *McLean* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 38, 50; *Heath & Milligan Manufacturing Co.* v. *Worst*, 207 U. S. 338; *Asbell* v. *Kansas*, 209 U. S. 251, 254, 256. Nor is there any conflict with the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768; *Savage* v. *Jones, supra.*

2. The statute provides for inspection and analysis. Under § 6, it is the duty of the State Food and Dairy Commissioner to "cause to be made analyses of all concentrated commercial feeding-stuffs and agricultural seeds sold or offered for sale in this State." For this purpose, that officer is authorized "in person or by deputy, to take for analysis a sample from any lot or package of concentrated commercial feeding-stuffs in this State," and further provision is made to assure the representative character of the sample. The results of the analyses are to be published from time to time in official bulletins. The State Food and Dairy Commissioner is required to enforce the statute and to this end is authorized to appoint, with the approval of the executive council, such analysts and chemists as may be necessary to carry it into effect. Violation of any of the provisions of the act is made a misdemeanor.

We are of opinion that the statute must be considered as an inspection law which it was within the power of the State to enact, and that its fair import is that the fees exacted by § 5 above quoted are for the purpose of meeting the expense of inspection. The bill alleges no facts

warranting the conclusion that the charge is unreasonable as compared with this expense. *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345, 347, 354, 361; *McLean* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38, 50; *Red "C" Oil Co.* v. *North Carolina,* 222 U. S. 380, 393; *Savage* v. *Jones, supra.*

The payment of the sum of one hundred dollars in the case of "condimental, patented, proprietary or trademarked stock or poultry foods" was required in lieu of the inspection charge of ten cents a ton, and was in effect a commutation of that charge. The essential character of the exaction was not altered. If it be said that this provision discriminates against one doing a small business, still the appellant wholly fails to show that it is thereby injured and thus entitled to complain. On the contrary, the bill alleges that the appellant "sells to more than eight hundred dealers in the State of Iowa, besides a very large number of customers who buy direct from your orator or through its agents," and that it "has been enabled to sell in the State of Iowa during the past year and for a number of years preceding a quantity of its goods in an amount exceeding $40,000 per annum."

The case in this aspect falls within the established rule that "one who would strike down a state statute as violative of the Federal Constitution must bring himself by proper averments and showing within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of rights protected by the Federal Constitution." *Southern Ry. Co.* v. *King,* 217 U. S. 524, 534. See also *Tyler* v. *The Judges,* 179 U. S. 405; *Turpin* v. *Lemon,* 187 U. S. 51, 60; *Hooker* v. *Burr,* 194 U. S. 415; *Hatch* v. *Reardon,* 204 U. S. 152, 160; *Collins* v. *Texas,* 223 U. S. 288, 295.

The Circuit Court was right in sustaining the demurrer.

*Affirmed.*