## WELCH v. NELSON ET AL.

(No. 805;  Decided November 22nd, 1915;  152 Pac. 788.)

COMMERCE—INTERSTATE COMMERCE—SALES OF NURSERY STOCK—IN-
SPECTION FEES—LICENSES—BOND REQUIRED—CONSTITUTIONAL LAW
—POLICE POWERS—STATUTES INVALID IN PART—LICENSE TAX—
PENALTY—ORDERS FOR FUTURE DELIVERY.

1. It is within the police power of the state to establish and
   enforce regulations governing the inspection and sale of
   nursery stock, the eradication of fruit pests and prohibiting
   sales thereof without a license.  (Comp. Stats. 2985-3006.)
2. The license exacted by Comp. Stats. 1910, Secs. 3004 and 3005,
   from persons engaged in the nursery business within and
   without the state is in the nature of an inspection fee
   collectable under the police power of the state and not a
   burden on interstate commerce or an impost upon imports.
3. A statutory provision requiring outside nurserymen to give a
   bond signed by a surety company authorized to do business
   in the state is invalid because confining the surety to a
   particular class.
4. The fact that Comp. Stats. 1910, Sec. 3005, is invalid in part
   does not render void the otherwise valid provisions of the
   act.
5. A nurseryman may be required to pay the license fee exacted
   by Comp. Stats. 1910, Sec. 3005, although the provisions of
   the same section requiring a bond signed by a surety com-
   pany are invalid.

ERROR to the District Court, Albany County;  HON. V. J.
TIDBALL, Judge.

Action by E. S. Welch against Aven Nelson et al., con-
stituting the State Board of Horticulture.  The plaintiff
sought to enjoin the Board from interference with his busi-
ness as a non-resident dealer in nursery stock, asserting his
right to make sales in the state after procuring the license
and giving the bond required by statute.  From an order
sustaining a demurrer to his petition, plaintiff brings error.

*Johnston & Coleman,* for plaintiff in error.

Compiled Statutes 1910, Sections 3004, 3005 and 3006,
are in conflict with the commerce clause of the Federal
Constitution;  the sections cannot be upheld as police regu-

lations for the reason that inspection, fumigation and destruction of diseased nursery stock and fruit trees is provided for by Sections 2992, 2996 and 2999, Comp. Stats. 1910, where inspection fees are provided for. The sales were orders taken for future delivery by shipments from another state. The statute requiring a license fee and a bond is therefore void, as to foreign nursery stock, as being a burden upon interstate commerce and an impost upon imports upon which Congress has exclusive control. (Brown v. Maryland, 25 U. S. 419, 6 L. Ed. 678; American Fer. Co. v. Board of Agriculture, 43 Fed. 609; Robbins v. Taxing District, 30 L. Ed. 695; Corson v. Maryland, 30 L. Ed. 699; Kehrer v. Stewart, 49 L. Ed. 663; Stoutenberg v. Hennick, U. S., 32 L. Ed. 638; Lyng v. Michigan, U. S., 34 L. Ed. 150; Brannon v. Titusville, U. S., 38 Fed. 719; Welton v. Missouri, U. S., 23 L. Ed. 347; Leloup v. Mobile, U. S., 32 L. Ed. 311; Crutcher v. Kentucky, U. S., 35 L. Ed. 649.) The foregoing are all federal decisions clearly in point. (See also *In re* Wilson (N. M.), 60 Pac. 73, a state decision, and Dozer v. Alabama, 218 U. S. 124; Ames v. People, 55 Pac. 725; State v. Glosby, 97 Pac. 735; Smith v. Farr, 104 Pac. 401; Eaton v. People, 104 Pac. 407; Wilcox v. People, 104 Pac. 408; Leonard v. Reed, 104 Pac. 411; *Ex Parte* Loeb, 72 Fed. 657; Asher v. Texas, 128 U. S. 129; McCoy v. California, 136 U. S. 124; State of Minnesota v. Baker, U. S., 34 L. Ed. 455; Brenner v. Rebman, U. S., 34 L. Ed. 862; *In re* Schecter, 63 Fed. 695.) On the foregoing authorities we maintain the license fee and bond in question cannot be held to be a reasonable police regulation.

*D. A. Preston,* Attorney General, for defendants in error.

The case of Brown v. Maryland, cited by counsel for plaintiff in error, is not in point, and if it were that part of the opinion relied upon is merely *obiter dictum;* goods brought from one state to another are subject to police regulations in the state of destination. (License cases: 5 How. (U. S.) 504, 575, 592, 594, 600, 605; Woodruff v. Parham,

8 Wallace (U. S.) 123; Brown v. Houston, 114 U. S. 622; Pittsburg &c. Coal Co. v. Bates, 156 U. S. 577; American Steel Co. v. Speed, 192 U. S. 500.) The statute involved in American Fer. Co. v. Board of Agriculture, cited by counsel, was construed to be a revenue measure and quite unlike the statute here in controversy. The statute involved in *In re* Schecter, 63 Fed. 695, was one prohibiting the sale of nursery stock not grown in the State of Minnesota and was condemned on that ground. Chapter 197, Comp. Stats. 1910, is clearly a police regulation and not a revenue measure, and therefore it is not objectionable on constitutional grounds. (Freund Police Power, pp. 33 and 34; People v. Murray, 149 N. Y. 367; Barbier v. Connolly, 113 U. S. 27, 31; Savage v. Jones, 225 U. S. 501, 524.) It is in that class of police regulations which have been uniformly upheld as a reasonable protection to the preservation of the safety of the public. (Messenger v. Board of Comm., 19 Wyo. 309; McDonald v. State (Ala.), 60 Am. Rep. 158; Osborne v. Mobile, 16 Wall. (U. S.) 479; Railroad Co. v. Fuller, 17 Wall. (U. S.) 560; Turner v. Maryland, 107 U. S. 38; Smith v. Alabama, 124 U. S. 465; Powell v. Pennsylvania, 127 U. S. 678; Machine Co. v. Gage, 100 U. S. 676; Plumley v. Massachusetts, 155 U. S. 461; Pittsburgh Coal Co. v. Louisiana, 156 U. S. 590, 598; Emert v. Missouri, 156 U. S. 296; Patapsco Guano Co. v. N. C. Board Agr., 171 U. S. 345; Asbell v. State of Kansas, 209 U. S. 251; Red. C. Oil Manf. Co. v. Board Agr. N. C., 222 U. S. 380. See also Standard Stock Food Co. v. Wright, 225 U. S. 540.) The license fee is reasonable. (Western Union Tel. Co. v. New Hope, 187 U. S. 425.) It is not an attempted regulation of interstate commerce. It is clear that the license fee of $25 is intended to cover the expense of inspection. A reasonable inspection charge is permissible. (Standard Stock Food Co. v. Wright &c., 225 U. S. 540; Vanmeter v. Spurrier &c., 94 Ky. 22; Brown v. Maryland, 12 Wheat. (U. S.) 419; Jacksonville v. Ledwith, 26 Fla. 163, 9 L. R. A. 69; Fayetteville v. Carter, 52 Ark. 301, 6 L. R. A. 509; Van Hook v. Selma, 70 Ala. 361, 45 Am. Rep. 85.) A similar statute was

upheld by the Supreme Court of South Dakota in *Ex parte* Hawley, 115 N. W. 93.

SCOTT, JUSTICE.

The plaintiff in error, who is an outside or non-resident nurseryman and doing business in this state without first having obtained a license so to do, brought this action against the defendants, who collectively constitute the State Board of Horticulture, to restrain them from interfering with his business in the state. A demurrer was interposed by the defendants, which was argued and submitted to and sustained by the trial court, and the plaintiff electing to stand on his petition, the court rendered judgment of dismissal and costs against him and he brings the case here on error.

Sections 2985 to 3006 have reference to the appointment of and who shall constitute the State Board of Horticulture, its organization, and divides the state into four horticultural districts, the residences of the persons so appointed, and that its office shall be located at such place as a majority thereof may determine, and Section 2991 provides: "For the purpose of preventing the spread of contagious diseases among fruit and fruit trees, and for the prevention, treatment, cure and extirpation of fruit pests, and diseases of fruit and fruit trees, and for the disinfection of grafts, scions and orchard debris, empty fruit boxes and packages, and other suspected material or transportable articles dangerous to orchards, fruit and fruit trees, said board may prescribe regulations for the inspection, disinfection, or destruction thereof, which regulations shall be distributed by the board to fruit growers and nurseries in the state and to such other nurseries as may desire the information."

Section 2992 reads as follows:

"The said board shall select from their own number, or appoint from without their number, to hold office at the pleasure of the said board, one competent person in each district, to be known as, and act as inspector of fruit pests. Said inspector shall be selected with reference to the study

of, and practical experience in horticulture.  Said inspector shall have free access, at all times, to all the premises where any trees, fruits, or horticultural supplies or products are kept or handled, and shall have full power to enforce the rules and regulations of the State Board of Horticulture, and to order the destruction, spraying and disinfection of any or all trees, plants, fruits, pits or horticultural products or supplies found to be infected with any diseases as prescribed or designated by said board."

Section 2993 provides:  "It shall be the duty of every outside nursery, holding a license to do business in Wyoming, to notify the secretary of the board, as inspector in chief, of every considerable shipment of nursery stock that it proposes to make into this state, said notice to reach the secretary at least five days before the delivery of said goods, and to state the kind of stock included and the probable time of its delivery, the railroad station and the name of the consignee.  It shall be the duty of every nursery, whether within or without the state, to attach to every separate box, bale or bundle of nursery stock consigned to Wyoming, the authorized shipping tag of the board, each individual purchaser's goods to be protected by at least one tag.  It shall be the further duty of such nursery to file with the secretary the full address of every agent or solicitor they may employ in the furtherance of their business in the state."

Section 2994 provides:  "If any person or persons in charge or control of any nurseries, orchard, store-room, packing house or other place where horticultural products or supplies are handled or kept, shall fail or refuse to comply with the rules and regulations of the said Board of Horticulture of this state or shall fail or refuse to disinfect or destroy any diseased or infected trees, plants, vines, scions, grafts, shrubs or other horticultural supplies or products, when ordered to do so by the inspector of such district, he shall be deemed guilty of misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than twenty dollars ($20.00) nor more than two hundred dollars ($200.00)."

Section 2999 provides: "The inspectors of fruit pests, appointed or elected by said board, shall receive as compensations for their services, such sum as the board may regulate; Provided, That it is not to exceed five dollars ($5.00) per day, for the time actually employed. The members of said board shall receive as compensation for their services only their actual expenses and five dollars ($5.00) per day for the time necessarily used in attending the regular or called meetings of the board. The secretary of the board shall receive such sum for his services as the board may designate."

We have quoted the foregoing sections to show the nature of the law. The act falls within the general police power of the state, and the board so created is authorized and empowered to make all necessary regulations (Sec. 2991) to the exercise of those powers. Penalties are prescribed for violation of the statute or for violations of the rules prescribed by the board, but the right to inflict penalties for the violation of the latter, however, is not here involved. It is made unlawful (Sec. 3004) for any one to "engage or continue in the business of selling within the state, or importing fruit trees, plants or nursery stock into the state without first having obtained a license to do business in the state, as in this chapter provided," and Section 3005 is as follows:

"Any person, firm or corporation may obtain a license to engage in the business of selling fruit trees, plants or nursery stock in this state, upon the payment of the sum of twenty-five dollars ($25.00) and by filing with the secretary of the State Board of Horticulture bonds for securities in the sum of five hundred dollars ($500.00) conditioned that the principal will faithfully obey the law of the State of Wyoming, and that said principal will pay the cost of fumigation of nursery stock or other materials or goods imported into or sold within the state by the said principal or principals or his or their agent, and the expense of destruction of any infected nursery stock. Licenses granted under this chapter shall be for a period of two inspection years, that is, shall terminate one year from the next succeeding first day

of July; and may be revoked at any time for violation of this chapter or of the regulations of the board. The surety on the bond shall in every case be one of the security companies that are authorized to do business in this state." Section 3006 says that "Any person or persons, corporation or corporations, transportation companies or common carriers, violating any of the provisions of this chapter, shall be deemed guilty of a misdemeanor and fined in the sum of not less than twenty dollars ($20.00) nor more than two hundred dollars ($200.00)."

It is the license feature of this law that is here assailed. It is contended that the license fee and the requirement of a bond each constitutes a burden upon interstate commerce and an impost upon imports of which Congress has exclusive control. The statute makes no discrimination between a resident and non-resident in the matter of the exaction of a license fee or bond. When such stock is shipped into the state it comes within the jurisdiction of the state and may be treated in accordance as any other like property within the state and is subject to inspection. The license fee is presumably collected by the secretary of the board and turned into the State Treasury, for it is provided by Section 3000 as follows: "All bills for expenditures under this chapter shall be audited and passed upon by the chairman and secretary of the board, and if found legal and just, shall be allowed, and a warrant shall be drawn therefor upon the Auditor of the State of Wyoming, who shall draw his warrant upon the State Treasurer therefor."

In its nature the case here does not differ in principle from Richter v. State, 16 Wyo. 437, 95 Pac. 51, involving the statute authorizing inspection and quarantining sheep found to be infected or having been exposed to infection, nor of Arbuckle et al. v. Pflaeging, 20 Wyo. 351, 123 Pac. 918, under a statute for stamping out and the prevention of the spread of infectious diseases among cattle, in which cases we upheld the law as a police regulation. The statute has for its object the stamping out and the prevention of the spread of contagious diseases among fruit trees and for the

prevention, treatment, cure and extirpation of fruit pests and diseases of fruit and fruit trees, and for the disinfection of grafts, scions and orchard debris, empty fruit boxes and packages, and other suspected material or transportable articles dangerous to orchards, fruit and fruit trees. If the inspection of sheep and cattle is a legitimate exercise of the police power of the state, then by parity of reasoning the statute for the inspection and stamping out and preventing the spread of diseases and pests among fruit trees must also be declared to be in the nature of a police regulation, and as soon as property becomes mingled with property of the state it becomes subject to the laws of the state with reference to inspection, if any, of that class of property, and as a prerequisite to permission to bring his property into and mingle it with that in the state the shipper may be required to pay a reasonable inspection fee. (5 R. C. L., Sec. 104.) It cannot be said that the inspection or license fee provided in this statute was directed at interstate commerce. (Savage v. Jones, 225 U. S. 501, 524, 32 Sup. Ct. 715; 56 L. Ed. 1182.) The designation of the fee as a *license* instead of an *inspection fee* has led to some confusion in construing the statute. The act assailed is essentially an inspection law. One cannot read it without being irresistibly drawn to that conclusion, although the sum fixed by the statute and authorized to be collected is designated as a license. The text of the act shows it to have been intended as a charge for inspection and that being so we would be authorized to interpret it in accordance with the intent so gathered from the act. (Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 Sup. Ct. 784; 56 L. Ed. 1197.) Ever since the establishment of the board the general appropriation bill of the biennial sessions of the Legislature have carried an item appropriating as and for contingent expenses of the board the sum of $3,000, and this goes to pay the expenses of the board and which board is clothed with the matter of state-wide inspection of fruit trees. We are of the opinion that the charge for license is in fact and was intended by the Legislature as a charge for inspection, that the court correctly held that it is

reasonable in amount and that it does not come within the inhibition of the interstate commerce clause of the Constitution of the United States.

But we think, however, that the requirement of a bond by the outside nurseryman to be signed by a surety company authorized to do business in the state is invalid under the decision of this court in the case of George Bolln Co. v. Irrigation Co., 19 Wyo. 542, 121 Pac. 22, 39 L. R. A. N. S. 868, because confining as it does the surety to a particular class; but it does not follow that the act cannot be sustained as to the provision for the license which we hold to be a charge for inspection, and there is nothing here to show that it is unreasonable. We therefore hold the provisions herein assailed to be valid except that with reference to the bond aforesaid. The board was authorized to require the plaintiff to pay the so-called license fee, but not to require the giving of the bond provided for in Section 3005. The board might be restrained as to requiring the bond, but as the plaintiff had not paid or offered to pay the fee aforesaid, he was not entitled to the injunction prayed for, and, therefore, the demurrer was properly sustained. The judgment must therefore be affirmed.                              *Affirmed.*

POTTER, C. J., and BEARD, J., concur.