DETWEILER et al. v. WELCH, Idaho Com'r of Agriculture, et al.

No. 1583.

District Court, D. Idaho, S. D.

Oct. 11, 1930.

Turner K. Hackman, of Twin Falls, Idaho, for plaintiffs.

W. D. Gillis, Atty. Gen., and Leon M. Fisk, Asst. Atty. Gen., for defendants.

Hodgin & Hodgin, of Twin Falls, Idaho, amicus curiæ.

CAVANAH, District Judge.

This is a suit in equity for an injunction by plaintiffs, who are growers and shippers of potatoes for sale in the state of Idaho in interstate commerce to market centers outside of the state, brought against the Commissioner of Agriculture, Chief Agricultural Inspector, Governor, and Attorney General of Idaho, to restrain them, and all persons acting under their authority, from enforcing the provisions of chapter 115, Idaho Session Laws 1929; or from interfering with plaintiffs in selling or shipping potatoes in interstate commerce. Plaintiffs do not pray for a preliminary injunction pending final determination of the cause, and the case is submitted upon agreement of final decision upon defendants' motion to dismiss and the affidavit of defendant Welch, which present the question as to the constitutionality of the act of the state Legislature.

A detailed statement of the bill seems necessary to present the question for decision. From the bill it appears that plaintiffs are engaged in growing and selling potatoes upon their lands in Twin Falls county, Idaho, for sale and shipment in interstate commerce to market centers outside of the state in bags without complying with the provisions of the act, which requires that when potatoes are offered for shipment, within or outside of the state, they shall be graded, as provided by the act, as "U. S. Fancy Idaho Potatoes," "U. S. No. 1 Idaho Selected Potatoes," "U. S. No. 2 Idaho Potatoes," "Idaho Potatoes," or "Cull Potatoes," and shall be packed in containers in conformity with certain prescribed rules, and further "when potatoes are shipped during the months of July, August and September, they may be packed in branded containers in conformity with the foregoing requirements, or they may be packed in plain bags at the option of the shipper, and may be shipped without being graded, but potatoes which are not graded must not be shipped in branded bags"; that the potatoes grown in the Twin Falls section mature after October 1st of each year, and those grown west of there mature prior to that date. The methods used in making sales of their potatoes to purchasers are: (a) In carload lots in their fields and cellars for shipment to points outside of the state. (b) By shipment in carload lots to points outside of the state, on consignment to warehousemen, brokers, and wholesale dealers. (c) By shipments in carload lots, accompanied by growers to points in other states.

The constitutionality of the act is challenged upon five grounds: (1) That it is a direct regulation of interstate commerce, places a burden thereon, and usurps the power vested in Congress by the Federal Constitution. (2) That it violates section 1 of the Fourteenth Amendment to the Constitution, in that it abridges the privileges of plaintiffs in contracting for the sale of potatoes of a wholesome character, which are based upon their intrinsic value as a product for human consumption. (3) That it deprives plaintiffs of their property without due process of law, in compelling them to sort, grade, and weigh the potatoes of varying diameters as a condition precedent to sale, and thereby incurring expense and costs of marking, grading, and placing the potatoes in inferior grades. (4) That the plaintiffs, who are growers of potatoes in the Twin Falls section, are discriminated against by reason of exempting from the operation of the act potatoes grown and matured in other sections of the state. (5) That a discrimination exists by exempting sales of potatoes by the "grower direct to the consumer in lots of less than car loads within the state" from grades and grading in violation of the Fourteenth Amendment.

Congress has not entered the field as to designate that farm products be graded and shipped in branded containers, but a number of the states have enacted similar legislation and who, with Idaho, may be considered as pioneers in that particular activity. With such legislation existing in other states it is urged that it is necessary for the Idaho act to be upheld in order to protect it from competition in those states where such requirements are enforced. But the principal question advanced by plaintiffs is that the Idaho act places a burden upon interstate commerce, and usurps the power vested in Congress to regulate interstate commerce shipments. It is beyond doubt that Congress has the exclusive power to regulate interstate commerce, but the Supreme Court from the beginning has recognized that there may be legitimate action by the state in the matter until Congress exercises its authority upon the subject. Minnesota Rate Case 1913, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. The police power of the state is not only designed to promote the public health and public safety, but it embraces regulations to promote the general prosperity, or public convenience or welfare. Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 503, 59 L. Ed. 835.

The two methods of marketing shipments under the act are in carload lots to points in other states on consignment, and shipments accompanied by the grower so that he may be there and make his sale, and which must be in branded containers. There does not seem to be any attempt, or interference, by the department officers of the state to prevent plaintiffs from selling their potatoes in their fields or cellars, for the relief plaintiffs are seeking under the bill is to restrain defendants from enforcing the act in regard to the offering for sale or shipping their potatoes in interstate commerce. The act does not prohibit the plaintiffs from selling their potatoes fit for human consumption locally, but by its terms it is necessary that the grower designate the true quality and form of the potato in branded containers when loaded into cars and shipped out of the state. With this understanding of the requirements of the act, we approach the consideration of the crucial question of whether the provisions in the act requiring growers and shippers to grade and place their potatoes in branded containers places a burden upon interstate commerce and usurps the power of Congress to regulate interstate commerce.

The statute may fairly be called an exercise of the police power of the state to regulate the marketing of farm products. Although it may indirectly affect interstate commerce, that will not render it invalid. Plumley v. Massachusetts, 155 U. S. 461, 15 S. Ct. 154, 39 L. Ed. 223; Slaughter House Cases, 16 Wall. 36, 21 L. Ed. 394; Field v. Barber Asphalt Pav. Co., 194 U. S. 618, 24 S. Ct. 784, 48 L. Ed. 1142. The whole act discloses the fact that its relation to interstate commerce is incidental. Sligh v. Kirkwood, supra, is directly to the effect that the state may, in the exercise of its police power, enact a statute regulating the shipment of immature citrus fruits to promote the general prosperity or public convenience or welfare, and to protect its reputation in foreign markets by prohibiting the shipping of its products in such an improper form as would have a detrimental effect upon its reputation. While the court there was considering the shipment of immature fruit, unfit for consumption as food, yet the broad view taken in extending the operation of the police power makes the conclusion there reached applicable to the present case, as it is there said:

"So it may be taken as established that the mere fact that interstate commerce is indirectly affected will not prevent the state from exercising its police power, at least until Congress, in the exercise of its supreme

74

authority, regulates the subject. Furthermore, this regulation cannot be declared invalid if within the range of the police power, unless it can be said that it has no reasonable relation to a legitimate purpose to be accomplished in its enactment; and whether such regulation is necessary in the public interest is primarily within the determination of the legislature, assuming the subject to be a proper matter of state regulation."

The Supreme Court of the state has recognized the right of the state to require an article, although wholesome, when packed for sale, to conform to established grades or standards. Marshall et al. v. Department of Agriculture et al., 44 Idaho, 440, 258 P. 171. And it is now generally held that it is a legitimate exercise of the police power of the state to regulate the marketing of farm products, provided when in doing so it does not run counter to an act of Congress or regulation adopted in pursuance of a congressional act. Sligh v. Kirkwood, supra; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197.

So my conclusion upon this branch of the case is that there is no doubt that the act under consideration does not usurp the power of Congress to regulate interstate commerce, nor does it interfere with the regulation of interstate commerce in the sense that it comes within the rule applicable to other statutes and circumstances prohibiting states from regulating interstate commerce.

The further contention that the act abridges the right of contract and deprives plaintiffs of their property without due process of law in requiring them to grade and weigh potatoes of varying diameters before sale, and by placing them in inferior grades incurs expense in marketing and grading the potatoes, would seem to fall under the principle that the state, under the police power, has power to restrict individuals in their contracts in the interest of the general welfare, and the constitutional guaranties do not prohibit the state Legislature from prescribing the manner in which contracts shall be made or from protecting the public against fraud or unfair dealing. Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253. The act merely requires the classification of potatoes when shipped into another state so that the purchasing public may know the grades and kind of potatoes they are purchasing, and the mere fact that in one of the classes the shipper is required to brand the containers "cull potatoes," which are potatoes not conforming to the quality, grade, and

size of the other classes required to be designated, or is required to pay the expense for such inspection and grading, would not deprive plaintiffs of their property without due process of law, when we come to consider that the police power is the control of private property and private interests for the public welfare, and a statute should not be rendered unconstitutional because the property of persons is subjected to restraint, or that expense results to individuals from the enforcement of the statute. 12 C. J. 931.

Plaintiffs' principal objection to requiring the grading as "cull" is that it would be detrimental to them in the marketing of their potatoes. Section 5 of the act defines "cull potatoes" to be those that fail to meet the requirements of the other grades. The other grades are potatoes of a variety which are mature, of certain size and well shaped and free from disease, insects, or mechanical injury and other defects, so it would seem that the requirement of grading potatoes as "culls" is not an unreasonable one, for if it informs the purchaser that potatoes graded as "culls" may be affected with disease, or insects, mechanical injury, or other defects, the protection of the health and welfare of the public then becomes involved, as well as fair dealing. Because the act requires, among other things, a label giving certain information as to grade and quality so as not to deceive the purchaser, and the payment of a reasonable charge for inspection and grading, should not condemn it as being unconstitutional. Standard Stock Food Co. v. Wright, supra.

The plaintiffs further criticize the statute because it exempts from its operation potato growers during the months of July, August, and September, at the option of the grower, and sales made by the grower direct to the consumer in lots of less than carloads, and therefore say that it discriminates against them.

Section 11 of the act provides:

"When potatoes are shipped during the months of July, August and September, they may be packed in branded containers in conformity with the foregoing requirements, or they may be packed in plain bags at the option of the shipper, and may be shipped without being graded, but potatoes which are not graded must not be shipped in branded bags."

It is obvious that this provision applies and operates equally and uniformly upon all persons in the state under like circumstances, and every producing section can take advan-

tage of this provision, as they can ship what is known as early potatoes during the three months mentioned, and those who raise potatoes in the Twin Falls section may, if they desire, ship them during those months the same as those in other sections of the state. The act operates equally as to all. State v. Horn, 27 Idaho, 782, 152 P. 275. The fact that those selling direct to the consumer in less than carload lots are not required to comply with the grading provisions is not such an act of discrimination against those shipping in carload lots outside of the state as can be regarded as a discrimination prohibited by the Constitution, for it does not appear that plaintiffs are injured because plaintiffs sell and ship in carload lots to purchasers outside of the state while they and other growers may sell direct to consumers within the state. The two situations are different. Standard Stock Food Co. v. Wright, supra. Recognizing then, as courts must, the long-established principle that legislative enactments should be upheld and enforced by the courts, unless they are plainly, beyond all question, in violation of the Constitution, the act in question must be held to be constitutional. Atkin v. Kansas, 191 U. S. 207, 24 S. Ct. 124, 48 L. Ed. 148.

Without further discussion, for the reasons stated the motion to dismiss is sustained, and the prayer for injunction denied.